United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 24, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re | § | **No. 24-60025** |
| **GFH, LTD.,** *et al.*[1] | § § | **Chapter 11** |
| | § | **Jointly Administered** |
| Debtors. | § | |

### ORDER SETTING HEARING ON CONFIRMATION OF SUBCHAPTER V SMALL BUSINESS PLAN AND FIXING TIME FOR FILING ACCEPTANCES OR REJECTIONS OF PLAN, COMBINED WITH NOTICE THEREOF

On October 22, 2024, the Debtors filed their Amended Joint Plan of Reorganization for Small Business Under Subchapter V, Chapter 11 (ECF no. 157).

IT IS THERFORE ORDERED THAT:

1. No later than two business days after the entry of this Order, Debtors must: (a) serve a copy of this Order, a copy of their proposed plan, and ballot(s) conforming to Official Form 14 on all parties entitled to notice, and (b) file a certificate of service with the Clerk's office.

2. Tuesday, November 12, 2024 is the deadline for filing and serving written objections to confirmation of the Plan.

3. Thursday, November 14, 2024 is the deadline for returning ballots accepting or rejecting the Plan. Ballots must be received on this day for them to be counted.

4. Friday, November 15, 2024 is the deadline for the Debtors to file: (a) ballot summaries and copies of all returned ballots, and (b) a proposed order confirming the Plan.

---

[1] The Debtors in these Chapter 11 cases, along with the last 4 digits of their respective Employer Identification Numbers or Social Security Numbers, are: (a) GFH, Ltd. (No. 24-60025, EIN x7639); (b) Grace Funeral Home, Inc. (No. 24-60026, EIN x3686); (c) Hauwin Enterprises, Inc. (No. 24-60027, EIN x6774); (d) Crossroads Mortuary Services, LLC (No. 24-60028, EIN x1214); (e) Charles Henry William Hauboldt, III and Heather Denise Hauboldt (No. 24-60029, SSN -2182 and SSN -6546).

5.  A confirmation hearing will be held on Monday, November 18, 2024 at 1:00 p.m. CST in Courtroom 401 at the United States Courthouse, 515 Rusk, 4th Floor, Houston, TX 77002.

6.  Parties who wish to appear electronically must follow the instructions on Judge Lopez's web page—https://www.txs.uscourts.gov/page/united-states-bankruptcy-judge-christopher-m-lopez. Parties are additionally instructed to: (1) call in utilizing the dial-in-number for hearings before Judge Lopez at 832-917-1510, conference room number 590153 and (2) log on to GoToMeeting for video appearances and witness testimony, utilizing conference code: JudgeLopez. Parties **must have two separate devices** to appear by video and telephonically. One device will be used to log on to GoToMeeting and the other will be used to call the telephonic conference line.

7.  Witness/exhibit lists and exhibits must be filed and exchanged in accordance with BLR 9013-2.

Signed:  October 24, 2024

Christopher Lopez
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re | § | No. 24-60025 |
| **GFH, LTD.,** *et al.*[1] | § | **Chapter 11** |
| | § | **Jointly Administered** |
| **Debtors.** | § | |

---

## SECOND AMENDED JOINT PLAN OF REORGANIZATION
## FOR SMALL BUSINESS UNDER SUBCHAPTER V, CHAPTER 11
### Dated October 28, 2024

---

THIS JOINT PLAN OF REORGANIZATION ("THE PLAN") IS SUBMITTED TO ALL CREDITORS AND INTEREST HOLDERS OF THE JOINTLY-ADMINISTERED DEBTORS, GFH, LTD., GRACE FUNERAL HOME, INC., HAUWIN ENTERPRISES, INC., CROSSROADS MORTUARY SERVICES, LLC, CHARLES HENRY WILLIAM HAUBOLDT III, AND HEATHER DENISE HAUBOLDT, ENTITLED TO VOTE ON THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY THE DEBTOR PURSUANT TO THE SMALL BUSINESS REORGANIZATION ACT, CODIFIED IN SUBCHAPTER V OF CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. 11 U.S.C. §§ 1181–1195. THIS PLAN OF REORGANIZATION CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE PLAN CAREFULLY.

A CONFIRMATION HEARING FOR THIS PLAN OF REORGANIZATION WILL BE HELD ON NOVEMBER 18, 2024 AT 1:00 P.M. FOR PARTIES WHO WISH TO APPEAR IN PERSON, THE HEARING WILL BE HELD IN COURTROOM 401, AT THE UNITED STATES COURTHOUSE, 515 RUSK, 4TH FLOOR, HOUSTON, TX 77002.

TO PARTICIPATE ELECTRONICALLY, PARTIES MUST FOLLOW THE INSTRUCTIONS SET FORTH ON JUDGE LOPEZ'S WEB PAGE LOCATED AT: https://www.txs.uscourts.gov/page/united-states-bankruptcy-judge-christopher-m-lopez.

---

[1] The Debtors in these Chapter 11 cases, along with the last 4 digits of their respective Employer Identification Numbers or Social Security Numbers, are: (a) GFH, Ltd. (No. 24-60025, EIN x7639); (b) Grace Funeral Home, Inc. (No. 24-60026, EIN x3686); (c) Hauwin Enterprises, Inc. (No. 24-60027, EIN x6774); (d) Crossroads Mortuary Services, LLC (No. 24-60028, EIN x1214); (e) Charles Henry William Hauboldt, III and Heather Denise Hauboldt (No. 24-60029, SSN -2182 and SSN -6546).

PARTIES ARE ADDITIONALLY INSTRUCTED TO: (1) CALL IN UTILIZING THE DIAL-IN-NUMBER FOR HEARINGS BEFORE JUDGE LOPEZ AT **832-917-1510**, CONFERENCE ROOM NUMBER 590153 **AND** (2) LOG ON TO GOTOMEETING FOR VIDEO APPEARANCES AND WITNESS TESTIMONY, UTILIZING CONFERENCE CODE: **JudgeLopez**. PARTIES **MUST HAVE TWO SEPARATE DEVICES** TO APPEAR BY VIDEO AND TELEPHONICALLY. ONE DEVICE WILL BE USED TO LOG ON TO GOTOMEETING AND THE OTHER WILL BE USED TO CALL THE TELEPHONIC CONFERENCE LINE.

CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN ARE URGED TO VOTE IN FAVOR OF THIS PLAN OF REORGANIZATION AND TO RETURN THE COMPLETED BALLOT TO PENDERGRAFT & SIMON, LLP, 2777 ALLEN PARKWAY, SUITE 800, HOUSTON, TX 77019 NOT LATER THAN NOVEMBER 14, 2024. VOTES WILL BE TABULATED WITH RESPECT TO THE DEBTORS' PLAN AND CLAIMS WILL BE CLASSIFIED AND DISTRIBUTIONS IN ACCORDANCE WITH THE PLAN.

TO THE EXTENT THE DEBTORS DO NOT RECEIVE SUFFICIENT VOTES FOR CONFIRMATION OF A CONSENSUAL PLAN, DEBTOR INTENDS TO INVOKE THE CRAMDOWN PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE IN ORDER TO OBTAIN CONFIRMATION OF THE PLAN. ALTERNATIVELY, THE PLAN MAY BE WITHDRAWN AND A NEW PLAN SUBMITTED.

THIS PLAN INCORPORATES BY REFERENCE CERTAIN DOCUMENTS RELATING TO THE DEBTOR THAT ARE NOT PRESENTED HEREIN OR DELIVERED WITH THIS PLAN, INCLUDING, BUT NOT LIMITED TO, THE DEBTORS' SCHEDULES, THE DEBTORS' STATEMENT OF FINANCIAL AFFAIRS, AND THE DEBTOR'S MONTHLY OPERATING REPORTS. THESE AND ALL OTHER DOCUMENTS AND PLEADINGS FILED WITH THE COURT PERTAINING TO THIS CASE ARE AVAILABLE FROM THE CLERK OF THE COURT (515 Rusk, 5th Floor, Houston, TX 77002, Tel. 713-250-5500). ELECTRONIC ACCESS TO THESE DOCUMENTS AND PLEADINGS IS AVAILABLE AT http://ecf.txsb.uscourts.gov. A PACER LOGIN WILL BE NECESSARY TO VIEW THE DOCUMENTS. IF YOU DO NOT HAVE A PACER LOGIN, YOU MAY REGISTER ONLINE AT http://pacer.psc.uscourts.gov.

# Table of Contents

I. Background for Case Filed under Subchapter V ...................................................................6

  A.  Description and History of the Debtors and Their Businesses ...........................................6

     1.  Charles Henry William Hauboldt III, and Heather Denise Hauboldt ..........................6

     2.  GFH, Ltd. ..........................................................................................................................7

     3.  Grace Funeral Home, Inc. ..............................................................................................7

     4.  Hauwin Enterprises, Inc. ...............................................................................................8

     5.  Crossroads Mortuary Services, LLC ...........................................................................10

  B.  Liquidation Analysis ...........................................................................................................10

  C.  Ability to make future plan payments and operate without further reorganization ........11

  D.  Risk Factors ........................................................................................................................12

II. Summary ...............................................................................................................................12

III. Definitions ..........................................................................................................................13

IV. Classification of Claims and Interests ...............................................................................15

V. Treatment of Administrative Expense Claims, Priority Claims, and Quarterly and
    Court Fees ...........................................................................................................................16

  A.  Unclassified claims ............................................................................................................16

  B.  Administrative expense claims ..........................................................................................16

  C.  Priority tax claims ..............................................................................................................17

     1.  Property Taxes ...............................................................................................................18

     2.  Franchise Taxes .............................................................................................................19

     3.  Federal Employment Taxes ...........................................................................................20

     4.  Federal Income Taxes ...................................................................................................20

     5.  Unsecured tax penalties and interest ...........................................................................22

     6.  General Provisions for Federal Taxes ..........................................................................22

  D.  Statutory fees ......................................................................................................................23

VI. Treatment of Claims and Interests Under the Plan ...........................................................23

  A.  Class 1 – Secured claim of SL Funding 5, LLC .................................................................23

  B.  Class 2 – Secured claim of Prosperity Bank ....................................................................28

  C.  Class 3 – Secured Claim of BizFund LLC ........................................................................31

  D.  Class 4 – Secured Claim of ODK Capital ........................................................................31

  E.  Class 5 – Secured Claim of Kubota Credit Corporation ..................................................32

  F.  Class 6 – Secured Claim of Texas Service Life Insurance Company ................................32

  G.  Class 7 – Secured Claim of Toyota Motor Credit ............................................................34

H. Class 8 – Secured Claim of Ally Bank ...................................................................35
I. Class 9 – Secured Claim of NewFirst National Bank ...........................................35
J. Class 10 – Secured Claim of Rocket Mortgage, LLC ..........................................35
K. Class 11 – Secured Claim of Velocity Credit Union ...........................................36
L. Class 12 – Priority Claims ...................................................................................36
M. Class 13 – General Unsecured Claims .................................................................36
N. Class 14 – Interests of the Equity Holders of the Entity Debtors........................37
O. Class 15 – Interests of the Individual Debtors in Property of the Estate.........................37

VII. Allowance and Disallowance of Claims ...................................................................38
A. Disputed claims ...................................................................................................38
B. Objections to claims ............................................................................................38
C. Interim distributions on Allowed Claims ............................................................38
D. Delay of distributions on a Disputed Claim ........................................................38
E. Anticipated claims objections .............................................................................38
F. Settlement of Disputed Claims ...........................................................................38

VIII. Provisions for Executory Contracts and Unexpired Leases .....................................39
A. Assumed executory contracts and unexpired leases............................................39
B. Rejected executory contracts and unexpired leases ............................................39

IX. Post-Confirmation Management .................................................................................40

X. Means for Implementation of the Plan .......................................................................40
A. Corporate Reorganization ....................................................................................40
B. Treatment of retained prepetition liens................................................................41
C. Sales of real and personal property not needed for an effective reorganization............41
    1. General ...........................................................................................................41
    2. Contingent sale through a broker or auctioneer .............................................42
    3. Uses of sales proceeds ...................................................................................42
    4. Sales of other real and personal property .......................................................42
D. Contribution of Proceeds from Sale of Assets of LS Tavern LLC ....................43
E. Sale of Reorganized Debtor Entities ...................................................................43
F. Sources of Funds for Distribution .......................................................................44
G. Distributions by Debtor under a consensual Plan ...............................................44
H. Distributions by Debtor under a nonconsensual Plan .........................................44
I. Termination of State Court Turnover Receivership .............................................44
J. Execution of all Plan Documents ........................................................................44
K. Tax elections........................................................................................................45

L. Default under the Plan ..................................................................................................45

M. Event of Uncured Default ...........................................................................................45

XI. Effect of Confirmation ......................................................................................................45

   A. Binding Effect of Confirmation...................................................................................45

   B. Injunction......................................................................................................................45

   C. Vesting of Assets ..........................................................................................................46

   D. Exculpation and Limitation of Liability ......................................................................46

   E. Employment of professionals after the Effective Date.................................................46

XII. Discharge ..........................................................................................................................47

   A. Charles Hauboldt and Heather Hauboldt......................................................................47

   B. GFH, Ltd. .....................................................................................................................47

   C. Grace Funeral Home, Inc.; Hauwin Enterprises, Inc.; and Crossroads Mortuary
      Services, LLC ................................................................................................................47

XIII. Other Provisions ..............................................................................................................48

   A. General .........................................................................................................................48

   B. Retention and Enforcement of Causes of Action. ........................................................48

   C. Employment of professionals after the Effective Date.................................................48

   D. Final Decree .................................................................................................................49

   E. Retention of Jurisdiction ..............................................................................................49

   F. Reservations of right to amend Plan.............................................................................50

XIV. Conclusion .......................................................................................................................50

# I.
# Background for Case Filed under Subchapter V

## A.   Description and History of the Debtors and Their Businesses

Charles and Heather Hauboldt are veterans of the funeral business and own and operate a group of interrelated businesses consisting of four funeral homes operating in Victoria, Goliad, and Port Lavaca, Texas. Their ownership of cemeteries in Victoria County and Bee County allows them to offer families in Victoria, Goliad, Port Lavaca, and their surrounding areas "one call" for all their funeral, cremation, and cemetery needs in the Greater Victoria area, comprising over 1,700 square miles.

## 1.   Charles Henry William Hauboldt III, and Heather Denise Hauboldt

CHARLES HENRY WILLIAM HAUBOLDT III ("C. Hauboldt") is a 5th generation resident of Victoria, Texas with over 40 years of experience in the funeral profession, starting in March 1980 with Colonial Funeral Home in, Victoria, Texas. He later worked for the newly opened Rosewood Funeral Home in 1988., Texas before purchasing the McCabe-Carruth Funeral Home in 2003 and starting Grace Funeral Home in February of 2004.

In addition to being a full-time funeral director and owner, C. Hauboldt has served on several civic organizations, served as President of the South-Central Funeral Directors Association, and is Past-President of the Texas Funeral Directors Association ("TFDA"). He is most proud of being known as the "man who plays Taps" and has had the honor for many years to play "Taps" for veterans, patriotic events, and memorials held in Victoria and its surrounding areas. Over the years, C. Hauboldt has served on the Jaycees, the Lions Club, Boys and Girls Club Chamber of Commerce Red Coat Committee in Calhoun County and has been very involved in the Bluebonnet Youth Ranch



and their fundraiser each year. C. Hauboldt and H. Hauboldt are very involved in many fundraisers in the communities they serve, including Warriors Weekend, multiple church fundraisers and civic organizations. Still today, community involvement is a top priority for the Hauboldts.

Married to C. Hauboldt, HEATHER DENISE HAUBOLDT ("H. Hauboldt") grew up living above her family's funeral home. After a short time as a special-education teacher, H. Hauboldt went back to her roots and became a licensed funeral director and embalmer. She is one of five licensed funeral directors in her family. She served as President of the North Texas Funeral Directors Association, is a Past-President of the Texas Funeral Directors Association ("TFDA") and was a member of the TFDA Disaster Response Team She spent three weeks in West, Texas after the fertilizer explosion to help the families of the first responders lost in that tragic disaster. The Hauboldts are also highly involved in the Wreaths Across America Program and participate in the ceremony at the Texas State Capital the 2nd Monday of December every year.

The Hauboldts also own Gracious Paws, LLC, which is not a debtor in these jointly administered cases. Gracious Paws Tribute Center provides grief support services and cremations for pets at its own facility near the Victoria Regional Airport.

The Hauboldts also own nonexempt real estate not related to deathcare services. The Hauboldts also own two restaurants–bars known as the "Lone Star Tavern" and the "Brown Bag Saloon." The "Lone Star Tavern" operates at a loss, and the Hauboldts are proposing the sale of this business and the real property it sits on in Section X(C), on page 41. The "Brown Bag Saloon" generates income, and the Hauboldts intend to use income from this business in furtherance of their reorganization as described in Section X(E), on page 44.

## 2.  GFH, Ltd.

GFH, LTD. ("GFH") is a Texas limited partnership organized in January 2003. Its General Partner is—and has always been—GFH I, LLC. Its primary purpose has been to own real estate consisting of funeral homes in Victoria, Goliad, and Port Lavaca, Texas. In fact, its funeral home in Goliad is the only funeral home in Goliad County. There were originally a group of investors, including C. Hauboldt, that held limited partnership interests. Over the years, C. Hauboldt bought out the investors' interests, and since 2012, he has been the sole Limited Partner of GFH.



Grace Funeral Home, 214 N. Market St., Goliad, Texas

## 3.  Grace Funeral Home, Inc.

GRACE FUNERAL HOME, INC. ("Grace") is a Texas corporation organized in April 2003 by Charles Hauboldt and a group of investors. Over the years, C. Hauboldt bought out the investors' interests, and since 2012, he has been the sole shareholder of Grace.

Grace operates the funeral homes owned by GFH. Its largest location is in Victoria County and contains administrative offices for Grace's business operations in Goliad and Port Lavaca.

C. Hauboldt opened Grace's original location in Victoria, Texas in February 2004.



Grace Funeral Home, 2401 Houston Hwy., Victoria, Texas

In March 2006, GFH acquired Alamo Heights Baptist Church in Port Lavaca, Texas. In August 2010, the church moved into its new location, allowing Grace to renovate and update the building for use as a funeral home.



Grace Funeral Chapel, 1604 W. Austin St., Port Lavaca, Texas

In November 2012, GFH purchased the Colonial Funeral Home in Goliad, Texas, which is a historic, Victorian-style home built in 1900. It is the only funeral home operating in Goliad County.

### 4. Hauwin Enterprises, Inc.

In February 2009, C. Hauboldt became a shareholder in HAUWIN ENTERPRISES, INC. ("Hauwin"), which owned and operated the Hauwin Crematory. C. Hauboldt was instrumental in its establishment of Golden Sunset Cemetery in Victoria, Texas, and Hauwin Crematory, facilitating the ability to take care of the families who choose Grace Funeral Homes to have their loved in

their care for any type of services from the time their loved one passes away until their services are complete, including all "back of the house" services such as embalming and cremation.[2]

In May 2016, Hauwin purchased Grace Memorial Chapel (formerly Heritage Funeral Home), on the grounds of Memory Gardens Cemetery in Victoria, Texas.



Grace Memorial Chapel, on the grounds of Memory Gardens Cemetery, Victoria, Texas

With a funeral home immediately adjacent to a perpetual care cemetery, called a "combo" in the profession, the Debtors were able, for the first time, to offer families the option of funeral services and committal at the same location. During this acquisition, they also purchased Memorial Park Cemetery and Beeville Memorial Park. With the acquisition of these cemeteries and the existing Golden Sunset Cemetery, the Hauboldts' three cemeteries in Victoria County and their only competition in the Catholic Diocese of Victoria.

---

[2] Currently, Hauwin's retort—the specialized cremation chamber where the cremation process takes place—is not operational at this time and requires a $65,000 capital investment for either its repair or replacement, which is provided for in the financial projections in EXHIBIT B. Nonetheless, the Debtors are able to contract with another crematory in the Victoria area, where Grace's or Hauwin's employees operate the other retort and perform the necessary cremation services.

Gracious Paws, LLC owns and operates its own retort for pet cremations. This retort is unsuitable for the cremation of humans.



Memorial Park Cemetery, Victoria, Texas

In terms of market share, the combined operations of Grace and Hauwin comprise approximately 48 percent of the market for funerals in the Greater Victoria area. Two other funeral homes in the area, Rosewood Funeral Chapel and Colonial Funeral Home, which are owned by Service Corporation International,[3] have a combined 35 percent market share, and the remaining 18 percent of the market is held by two other—unrelated—funeral homes.

### 5. Crossroads Mortuary Services, LLC

CROSSROADS MORTUARY SERVICES, LLC was organized as a Texas limited liability company on February 5, 2018, for the purpose of providing transportation and support services for the funeral homes operated by Grace and Hauwin, as well as for other funeral homes in the Victoria region and for Victoria County. Victoria is a medical "hub" for the surrounding area and supports funeral homes over 60 miles from Victoria with first calls, preparations and cremations. Victoria and the surrounding communities do not have a coroner or medical examiner, and Crossroads provides these services for Victoria, Goliad, Jackson and Bee Counties, for any accident, homicide, or any unattended death.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as EXHIBIT A.

In a hypothetical liquidation of the separate estates of GFH, Grace, Hauwin, Crossroads, and the Hauboldts, the liquidation value of the assets is insufficient to pay any unsecured claims of Grace,

---

[3] SCI is the largest funeral and cemetery services company in North America, operating more than 1,500 funeral homes and 400 cemeteries. It is traded on the New York Stock Exchange as SCI.

Hauwin, or Crossroads. GFH has equity in its assets that could be liquidated—real estate holdings consisting of funeral homes in built-up areas—it has no listed unsecured creditors. Only if the estates of GFH, Grace, Hauwin, and Crossroads were substantively consolidated in a Chapter 7 liquidation would their unsecured creditors have a reasonable chance of recovering any of their claims. Moreover, liquidation of the Hauwin real property—dedicated cemeteries—would be almost impossible as that property may only be used for the internment purposes.[4]

As to the Hauboldts, a liquidation of their non-exempt property in Chapter 7 would provide no benefit to the unsecured creditors of Grace, Hauwin, and Crossroads. Considering the Hauboldts having mostly exempt, illiquid, and encumbered assets (as reflected on the Hauboldts' Schedules), the financial value and prospects of the Hauboldt Debtors stem from their ability to reorganize their Debtor entity businesses, continue their ongoing business operations, reach maximum profitability, continue drawing a salary from same, and pay their obligations and debts, as they become due. Due to the limited nonexempt and unencumbered assets owned by Hauboldts, the return to creditors in the event their Bankruptcy Estate is liquidated would be nominal, at best. The Hauboldts' primary non-exempt assets are the joint Debtor entities themselves, and four real estate properties that either have limited equity or have secured lien claims that exceed the respective collateral properties' value. All four of these properties are already intended to be sold by the Hauboldts as part of reorganization. As discussed in Section X(B), on page 41, two of the properties are already subject to pending and/or forthcoming Motions to Sell Free and Clear of Liens, Claims, and Encumbrances pursuant to Section 363 of the Bankruptcy Code, with the remaining two properties to be sold, as soon as possible.

Accordingly, the Plan Proponents assert that the reorganization of their estates that is proposed in this Plan will maximize the recovery that their unsecured creditors will receive, even if over time, while ensuring that the Allowed Claims of their secured creditors and unsecured creditors with priority claims under 11 U.S.C. § 507 will be paid in full, with interest.

## C. Ability to make future plan payments and operate without further reorganization

The Plan Proponents must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtors' businesses.

The Plan may provide for the payment of future earnings for a period of 36 months after the Effective Date of the Plan. Currently, the Debtors have the ability to pay their creditors from projected Disposable Income as is shown in the analysis provided in Exhibit B.

Debtors believe it is likely that his projected Disposable Income will be more than adequate to pay all Allowed Claims in full, with interest and applicable statutory penalties.

---

[4] See Tex. Health & Safety Code § 711.035 (property dedicated as a cemetery may only be used for cemetery purposes until the dedication is removed). Once dedicated for cemetery use, a dedication can only be removed by application to a Texas district court and showing that: (a) the removal is in the public interest and (b) either (1) all remains have been removed from that portion of the cemetery where the dedication is to be removed, or (2) no interments were made in that portion of the cemetery where the dedication is to be removed and that portion of the cemetery is not used or necessary for interment purposes. Id. § 711.036.

For these reasons, the Debtors assert that this Plan provides Fair and Equitable treatment to the Allowed Claims of all creditors and interest holders without interjecting any uncertainty over the amounts that may be ultimately realized in the liquidation of Debtors' nonexempt assets under an alternative Chapter 7 liquidation.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## D. Risk Factors

Certain risk factors are inherent in any plan of reorganization. As described in Section X(D), on page 43, the Debtors describe the schedule for an anticipated sale of GFH, Grace, Hauwin, and Crossroads (the "Entity Debtors") after a period of no more than 6 to 12 months of preparing the businesses for a sale after the Effective Date of this Plan. Debtor's projections are based upon past performance, including natural cycles in the number of annual deaths. Nonetheless, a downturn in the economy could make it difficult for customers to purchase the projected funeral services, in-stead opting for less expensive options. This would result in reduced cash flows, which would make the deferred payments described in the Plan difficult or impossible. Further, it is possible that the ultimate sale of the Entity Debtors will not net adequate proceeds to pay all creditors as contemplated.

The Debtors assert that the risks of failure of a confirmed plan are minimal and that the Reorganized Debtors will be able to successfully complete this Plan without defaulting on the obligations they will be undertaking.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these risk factors.**

## II.
## Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of GFH, Grace Funeral Home, Inc., Hauwin Enterprises, Inc., Crossroads Mortuary Services, LLC, Charles Henry William Hauboldt III, and Heather Denise Hauboldt (the *Debtors*) from: (a) proceeds from the sale of the Hauboldts' non-exempt real property; (b) future Disposable Income from the business operations of GFH, Grace, Hauwin, and Crossroads; and (c) proceeds from the sale of all, or part, of the business of GFH, Grace, Hauwin, and Crossroads within the 18-month period following the Effective Date of the Plan.

As described more fully in Section X(A), on page 40, the Debtors propose to merge the estates of GFH, Grace, Hauwin, and Crossroads (the "Entity Debtors"). The Plan does not consolidate the estate of C. Hauboldt and H. Hauboldt (the "Individual Debtors") with the Entity Debtors. As a matter of convenience, the treatment for the creditors of each Debtor is described together on a class-by-class basis. However, the Entity Debtors and the Individual Debtors are proposing their own plans of reorganization, and the Debtors' respective Plans shall each be separately considered

for purposes of confirmation, including for purposes of cramdown pursuant to 11 U.S.C. §§ 1191(b) and 1129(b).

This Plan provides for:

- 11 classes of secured claims;
- 1 empty class for potential priority unsecured claims;
- 1 class of general unsecured claims; and
- 2 classes representing Debtors' interests in the property of the Estate.

Non-priority unsecured creditors holding Allowed Claims will receive distributions, which the proponent of this Plan has valued at approximately 25 cents on the dollar, not counting possible future net sales proceeds equal to 5 percent of the net sales proceeds from the merged Reorganized Entity Debtors. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## III.
## Definitions

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

"***Administrative Claim***" or "***Administrative Priority Claim***" means a Claim that is entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b)(1)–503(b)(9), 506(c), or 1103 asserted in this case, which Claims are described in Section VI of this Disclosure Statement and treated in Section VI of this Disclosure Statement and Plan.

"***Administrative Claim Bar Date***" means the date set by the Court by which administrative claims entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b), 506(c), or 1103 asserted in these cases, including substantial contribution claims, must be filed. Debtor will request that the Court set the Administrative Claim Bar Date by separate order of the Court.

"***Allowed Claim***" means a Claim or any portion thereof:

1. that has been allowed by a Final Order,

2. that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to

which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or

3. that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an administrative claim.

"*Allowed Claim*" further means an administrative claim as to which a timely request for payment has been made in accordance with this Plan—if such written request is required—or other administrative claim, in each case as to which:

1. a timely objection has not been filed, or

2. a timely objection is filed, and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

"***Claim***" means a claim against any of the Debtors' Bankruptcy Estates, whether asserted, as defined in 11 U.S.C. § 101(5).

"***Claims Bar Date***" means the last date holders of non-administrative claims that are not governmental units may file claims against the Debtors' Bankruptcy Estate—August 9, 2024.

"***Confirmation***" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

"***Confirmation Date***" means the date of entry by the Bankruptcy Court of the Confirmation Order.

"***Confirmation Order***" means the order entered by the Bankruptcy Court confirming the Plan.

"***Disposable Income***" means the income that is received by the debtor and that is not reasonably necessary to be expended: (1) for the maintenance or support of the debtor or a dependent of the debtor or a domestic support obligation that first becomes payable after the Petition Date; or (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

"***Effective Date***" shall occur on the date of *Substantial Consummation*, as defined below.

"***Entity Debtors***" shall mean GFH, Grace, Hauwin, and/or Crossroads.

"***Final Order***" means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtors' Bankruptcy Cases, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

"**Government Claim Bar Date**" means the last date holders of non-administrative claims that are governmental units may file claims against the Debtors' Bankruptcy Estates—November 27, 2024.

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of 11 U.S.C. § 1124.

"**Individual Debtors**" shall mean C. Hauboldt and H. Hauboldt.

"**Plan**" means this Plan of Reorganization, as it may be further amended or supplemented.

"**Priority Claim**" means a Claim asserted under 11 U.S.C. §§ 507(a)(3)–507(a)(10) against the Debtors' Bankruptcy Estates.

"**Secured Claim**" means a Claim, other than a setoff claim, that is secured by an encumbrance, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the effective date or such later date as is established by the Bankruptcy Court, of such interest or encumbrance as determined by a Final Order of the Bankruptcy Court pursuant to 11 U.S.C. § 506 or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"**Subchapter V Trustee**" means Sylvia Mayer, who was appointed by the U.S. Trustee to serve as the Subchapter V Trustee and carry out those duties specified in 11 U.S.C. § 1183.

"**Substantial Consummation**" means: (a) transfer of all or substantially all the property proposed by the Plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the Plan of the business or of the management of all or substantially all the property dealt with by the Plan; and (c) commencement of distribution under the Plan.

"**Unimpaired Claim**" means a claim that is not an impaired claim.

"**Unsecured Claim**" shall mean a claim that is not entitled to priority under 11 U.S.C. §§ 507(a)(1)–507(a)(9) and includes deficiency claims of any of the secured creditors.

**IV.**
**Classification of Claims and Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|
| 1 | Impaired | Secured claim of SL Funding 5, LLC |
| 2 | Impaired | Secured claim of Prosperity Bank |
| 3 | Impaired | Secured claim of BizFund LLC |
| 4 | Impaired | Secured claim of ODK Capital, LLC |
| 5 | Unimpaired | Secured claim of Kubota Credit Corporation |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| 6 | Impaired | Secured claim of Texas Service Life Insurance Company |
| 7 | Unimpaired | Secured claim of Lexus Financial |
| 8 | Unimpaired | Secured claim of Ally Bank |
| 9 | Unimpaired | Secured claim of NewFirst National Bank |
| 10 | Unimpaired | Secured claim of Rocket Mortgage, LLC |
| 11 | Unimpaired | Secured claim of Velocity Credit Union |
| 12 | n/a | All Allowed Claims entitled to priority under 11 U.S.C. § 507(a) (except administrative expense claims under 11 U.S.C. § 507(a)(2) and priority tax claims under 11 U.S.C. § 507(a)(8). <br><br> This is an empty class; Debtors do not anticipate any Allowed Claims in this class but is keeping it available for such Allowed Claims out of an abundance of caution. |
| 13 | Impaired | All allowed general unsecured claims. |
| 14 | Impaired | Interests of the Equity Holders of the Entity Debtors |
| 15 | Impaired | Interests of the Individual Debtors in Property of the Estate |

Specific treatment of these classes of claims and interests is set forth in Sections V and VI.

**V.**

**Treatment of Administrative Expense Claims, Priority Claims, and Quarterly and Court Fees**

## A. Unclassified claims

Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

## B. Administrative expense claims

Subject to Court approval of a fee application(s), each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtors anticipate there will be six administrative expense claims made by: (1) Pendergraft & Simon, LLP, counsel for the Entity Debtors, (2) Hoffman & Saweris, P.C., counsel for the Individual Debtors, (3) Robert Ogle, the Chief Restructuring Officer, (4) Ludlum & Mannen CPA, (5) Sylvia Mayer, the Subchapter V Trustee, and (6) Seth Kretzer, a *Superseded Custodian*. Any claims for administrative expenses will require the submission of a fee application and approval of the said fee application by the Bankruptcy Court before any claim can be paid. The deadline for

filing fee applications for professional fees is 30 days after the Effective Date, unless the Court sets a different deadline in the Confirmation Order.

The Debtors anticipate that administrative claims will be as follows; however, these are estimates net of any pre-petition retainers received, and the final amounts could vary from the estimates by a significant amount:

| Claimant | Amount |
|---|---|
| Pendergraft & Simon, LLP | $50,000.00 |
| Hoffman & Saweris, P.C. | 40,000.00 |
| Robert Ogle, CRO | 50,000.00 |
| Ludlum & Mannen CPA | 10,000.00 |
| Sylvia Mayer, Subch. V Trustee | 7,500.00 |
| Seth Kretzer, Superseded Custodian[5] | 70,000.00 |
| Total | $227,500.00 |

In the event any administrative fee has not been approved by the Court by the Effective Date, the Debtors will hold such amount in reserve until approval.

## C. Priority tax claims

Each holder of a priority tax claim will be paid in in full, either on the Effective Date or in deferred cash payments, including all statutory penalties and interest as described below. The Debtors have two types of priority tax claims described below.

---

[5] In his Request for Allowance of Administrative Priority Claim Pursuant to § 543(c)(2) and § 503(b)(3)(B) of the Bankruptcy Code, the Superseded Custodiann requested $162,262.02 in fees (ECF no. 113), and his Amended Request for Allowance of Administrative Priority Claim Pursuant to § 543(c)(2) and § 503(b)(3)(B) of the Bankruptcy Code, requested and award $166,262.02 in fees (ECF no. 155). Both Applications were opposed by the Debtors (ECF no. 124), SL Funding (ECF no. 121), and Prosperity Bank (ECF no. 123). The Bankruptcy Court held a evidentiary hearing on October 2, 2024 and October 22, 2024. Prior to the conclusion of the hearing, the Debtors and the Superseded Custodian settled and agreed to the following: • An allowed administrative claim in the amount of $70,000.00 to be paid on the Effective Date;

• Full and mutual releases of all claims that may exist between the Debtors and the Superseded Custodian and his agents;

• The Superseded Custodian will support dismissal or termination of the turnover receivership by the court with jurisdiction upon confirmation of this Plan; and

• The Superseded Custodian will not oppose confirmation of this Plan.

## 1. Property Taxes

As shown in the table below, certain local taxing authorities (collectively the "Ad Valorem Taxing Authorities") filed proofs of claims for estimated taxes due as of the Petition Date for the 2024 tax year:

| Creditor | Claim per Schedules | | Proof of Claim | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Amount | CUD | Amount | Date Filed | Objection | Position on Allowance |
| **GFH, Ltd.** | | | | | | |
| Calhoun County | $12,950.00 | | $23,313.20 | 7/26/2024 | | $35,184.95 |
| Goliad County | 8,313.99 | | 15,671.50 | 7/12/2024 | | 15,671.50 |
| Victoria County | 62,705.39 | | 93,920.91 | 7/12/2024 | | 93,920.91 |
| **Grace Funeral Home** | | | | | | |
| Calhoun County | 0.00 | | 129.72 | 6/28/2024 | | 129.72 |
| Goliad County | 0.00 | | 1,150.48 | 7/12/2024 | | 1,150.48 |
| Victoria County | 0.00 | | 3,158.85 | 7/12/2024 | | 3,158.85 |
| **Hauwin Enterprises** | | | | | | |
| Bee County | 0.00 | | 2,729.89 | 7/12/2024 | | 2,729.89 |
| Victoria County | 0.00 | | 4,347.15 | 7/12/2024 | | 4,347.15 |
| **C. Hauboldt & H. Hauboldt** | | | | | | |
| Aransas County | 3,122.54 | | 5,885.82 | 8/5/2024 | | 5,885.82 |
| Victoria County (209 Woodbridge) | 0.00 | | 5,574.87 | 8/5/2024 | | 5,574.87 |
| Victoria County (5354 FM 447) | 0.00 | | 3,056.97 | 8/5/2024 | | 3,056.97 |
| Victoria County (3306 Erwin) | 12,937.82 | | 16,600.82 | 8/5/2024 | | 16,660.82 |
| Victoria County (3613 Cypress) | 1,965.69 | | 3,705.23 | 8/5/2024 | | 3,705.23 |
| **Total** | | | | | | **$191,177.16** |

Taxes for the 2024 tax year are not currently due and will not be considered delinquent until February 1, 2025. *See* Tex. Tax Code. § 31.02.

The Priority Tax Claims for property taxes arising under the Texas Tax Code (collectively the "Ad Valorem Taxing Authorities") are also secured claims under 11 U.S.C. § 506(b) and are secured by a first-in-priority, statutory lien on all the Debtors' assets pursuant to Tex. Tax Code § 32.01.

Notwithstanding anything to the contrary contained within the Confirmed Plan, property taxes due at the Effective Date to any Ad Valorem Taxing Authority shall be paid by the Reorganized Entity Debtors and the Reorganized Individual Debtors equal, deferred payments over a term running from the 13th month following the Effective Date and ending on the 60th month following the Petition Date.[6] Any property taxes for years 2023 and prior shall bear interest at the statutory rate of 12 percent per annum accruing from the Petition Date until said taxes are paid in full. The property taxes for the 2024 tax year shall bear interest at the statutory rate of 12 percent per annum

---

[6] *See* EXHIBIT D for a comparative payment schedule of the allowed claim in this and other classes.

beginning February 1, 2025, until said taxes are paid in full. Any, and all, statutory tax liens securing prepetition and post-petition taxes shall be retained until such taxes are paid in full.

Notwithstanding anything in the above paragraph, at the closing of any sale of any real property with an unsatisfied tax lien, all amounts due to the Ad Valorem Taxing Authority(ies) holding a statutory tax lien will be paid in full ahead of all junior lienholders.

Any post-petition property taxes owed to any ad valorem taxing authority over real property of the Estates shall be paid in the ordinary course of business and prior to delinquency under Texas law, and the ad valorem taxing authorities shall not be required to file an Administrative Expense Claim or request for allowance and payment of their claim. In the event any post-petition property taxes are not paid prior to delinquency under Texas law, penalties and interest shall accrue as provided under Texas law and the ad valorem taxing authorities shall be authorized to commence any, and all, collection activities in state court without further order of this Court.

Default shall occur if either:

1. The Allowed Claims of the ad valorem taxing authorities are not paid in accordance with the schedule set forth above, or

2. If the Debtors fail to pay any post-petition taxes prior to the statutory delinquency date under the Texas Tax Code.

In the event of default, the affected ad valorem taxing authority shall send written notice of default to the defaulting Debtor(s) and its attorney. If the default is not cured within 21 days after notice of the default is mailed, the affected ad valorem taxing authority may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Tax Code.

## 2. Franchise Taxes

The Texas Comptroller of Public Accounts ("Texas Comptroller") filed proofs of claims against the Grace and Hauwin estates seeking to recover from each, a $2,000.00 priority claim for unpaid franchise taxes.

The Comptroller shall have an Allowed Claim in the amount of $4,000.00. The Reorganized Entity Debtors will pay this amount, along with statutory penalties of 10 percent[7] plus interest at the statutory rate of the Prime Rate as published in *The Wall Street Journal* on the first day of each calendar year that is not a Saturday, Sunday, or legal holiday, *plus* 1 percent.[8] Notwithstanding anything to the contrary contained within the Confirmed Plan, all franchise taxes, penalties, and interest shall be paid by the Reorganized Entity Debtors in, deferred payments over a term running from the Effective Date to the 24th month from the Effective Date.

---

[7] Tex. Tax Code § 171.362.

[8] Tex. Tax Code § 111.060.

The Reorganized Entity Debtors shall retain the right to amend previously-filed tax returns and reduce the amount of required monthly payments based upon any lesser amount that may be assessed by the Texas Comptroller, provided that any reduced payment will be at an amount that will pay all amounts due to the Texas Comptroller within 24 months of the Effective Date.

### 3. Federal Employment Taxes

Grace scheduled a priority, unsecured claim of $55,000 for unpaid employment taxes for the fourth quarter of 2023. On July 3, 2024, the IRS filed a proof of claim setting forth the following employment taxes, which are entitled to priority under 11 U.S.C. § 507(a)(8):

| Type of Tax | Amount Claimed | Interest to Petition Date | Total |
|---|---|---|---|
| WT-FICA (6/30/2023) | $35,217.70 | $2,638.20 | $37,855.90 |
| WT-FICA (12/31/2023) | 0.00 | 0.00 | .00 |
| FUTA | 1,117.54 | 29.95 | 1,147.49 |
| **Total** | **$36,335.24** | **$2,668.15** | **$39,003.39** |

The IRS shall be entitled to an Allowed Claim in the amounts set forth in its proof of claim, and these taxes will be paid, in full, including all interest at 8 percent per annum, compounded daily on the 15th day of every month. Starting on the 15th day of the third month following the Effective Date of the Plan and continuing through May 15, 2029. The amount of the monthly payment will be based upon the Allowed Claim plus all accrued interest at the Effective Date divided by the number of months between the date the first payment is due and May 15, 2029.[9]

The federal employment taxes due to the IRS will be paid in full, are not impaired, and will be subject to the additional requirements set forth in Paragraph 5, below.

### 4. Federal Income Taxes

### a. *Charles & Heather Hauboldt*

On July 3, 2024, the IRS filed a proof of claim for income taxes for the tax years ending December 31, 2017 through December 31, 2023, summarized as follows:

| Tax Period Ending | Amount Claimed | Interest to Petition Date | Total |
|---|---|---|---|
| **Priority** | | | |
| 12/31/2021 | $49,450.00 | $7,532.72 | $56,982.72 |

---

[9] *See* EXHIBIT D for a comparative payment schedule of the allowed claim in this and other classes.

| Tax Period Ending | Amount Claimed | Interest to Petition Date | Total |
|---|---|---|---|
| 12/31/2022 | 166,141.00[10] | 14,847.86 | 180,988.86 |
| 12/31/2023 | 36,467.52[11] | 368.48 | 36,836.00 |
| **General Unsecured** | | | |
| 12/31/2017 | 11,016.62 | 5,147.53 | 16,164.15 |
| 12/31/2018 | 17,291.00 | 5,099.80 | 22,390.80 |
| 12/31/2019 | 22,758.00 | 4,891.13 | 27,649.13 |
| Penalties to Petition Date | 80,838.25 | | 80,838.25 |
| **Total** | **$383,962.39** | **$37,887.52** | **$421,849.91** |

The IRS shall be entitled to an Allowed Claim totaling $421,849.90, of which $274,807.57 is entitled to priority as set forth in its proof of claim, and $147,042.33 is classified as a general unsecured claim. Due to the filing of an amended income tax return for 2022 and their original 2023 tax return, the Hauboldts expect that the IRS will file an amended proof of claim, perhaps prior to the Confirmation Date, that will reduce their overall tax liability by approximately $185,000.00.

Taxes entitled to priority will be paid, in full including all interest at 8 percent per annum, compounded daily on the 15th day of every month, starting at the Petition Date. Starting on the 15th day of the third month following the Effective Date of the Plan and continuing through May 15, 2029. The amount of the monthly payment will be based upon the Allowed Claim plus all accrued interest at the Effective Date divided by the number of months between the date the first payment is due and May 15, 2029.

The federal income taxes that are entitled to priority will be paid in full, are not impaired, and will be subject to the additional requirements set forth in Paragraph 5, below.

Of the taxes classified as a general unsecured claim, those taxes will be treated as a claim in Class 11 as set forth in Section VI(K), on page 36.

---

[10] On August 15, 2024, the Hauboldts filed an amended income tax return for 2022 (form 1040-X), asserting that their underlying tax liability for 2022, originally reported at $178,000.00 should be reduced by $147,713.00, resulting in a total tax liability for the year of $30,287.00. Assuming the IRS accepts this amendment, the Hauboldts expect an amended proof of claim will eliminate a like amount of the priority claim for 2022 and a proportionate amount of the $80,838.25 in penalties as of the Petition Date.

[11] The amount claimed was based upon an estimate. On October 15, 2023, the Hauboldts filed their 2023 income tax return (form 1040), asserting that they are due a refund of $7,728.00 for the year. Assuming the IRS's assessment of the Hauboldts' 2023 income taxes is in agreement, the Hauboldts expect an amended proof of claim will eliminate $36,836.00 of the priority claim.

### b. GFH, Ltd., Grace Funeral Home, Inc., Hauwin Enterprises, Inc., and Crossroads Mortuary Services, LLC

Being that GFH is a limited partnership and Grace, Hauwin, and Crossroads have elected to be classified as S-Corporations, these Debtors are classified as pass-through entities for federal tax purposes and do not pay income taxes on the entity level. *See* 26 C.F.R. § 1.67-2T. Instead, the income passes to the partners, shareholders, or members, as the case may be, who report income derived from the Debtors on their personal income tax returns and pay income taxes for their share of the respective entities. Accordingly, GFH, Grace, Hauwin, and Crossroads do not owe any income taxes and do not anticipate the filing of any proof of claim for income taxes by the IRS.

### 5. Unsecured tax penalties and interest

In the proofs of claims filed by the IRS, it seeks recovery of penalties and interest as of the Petition Date as a general, unsecured claims as follows:

| | |
|---|---|
| • GFH, Ltd. | $470.00 |
| • Grace | 3,057.21 |
| • Hauwin | 689.31 |
| • Crossroads | 470.00 |
| • Hauboldts | 80,838.25 |
| TOTAL | $85,524.77 |

Because these penalties and interest are general unsecured claims, interest and penalties will be treated as a claim in Class 11 as set forth in Section VI(K), on page 36.

### 6. General Provisions for Federal Taxes

The debt owed by the Debtors to the IRS is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code and this Plan, and that if a Debtor should default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default.

A failure by a Debtor to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default, and as to the IRS, there is an event of default if payment is not received by the 15th day of each month. If there is a default, the IRS must send a written demand for payment, and said payment must be received by the IRS within 15 days of the date of the demand letter. The Debtors can receive up to three (3) notices of default from the IRS; however, on the third notice of default from the IRS, the third notice of default cannot be cured, and the IRS may accelerate its allowed claims, past and future, and declare the outstanding amount of such claims to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claims of the IRS, secured, unsecured priority, unsecured general and administrative priority.

The IRS is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Reorganized Debtors for pre-petition claims during the duration of the Plan—provided there is no default as to the IRS. The period

of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 30 days after the date of the demand letter (described above) for which the debtor failed to cure the default.

The Debtors' failure to remain current on their ongoing tax obligations shall be an event of default under the terms of the Plan. The Debtors are required to stay current on all ongoing tax report-ing/tax payments with the IRS. If the Debtors default to the IRS (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement. The IRS must send a written demand to the Debtor or Reorganized Debtor of the default and the Debtor must cure the default within 15 days of the date on the demand letter. If the default is not cured within 15 days, the IRS may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.

**IRS remedies upon default**.  Upon any final and non-curable default by the Reorganized Debtors, the IRS may accelerate its allowed pre- and post-petition claims (and any future administrative claims) and declare the outstanding amounts of such claims to be immediately due and owing. The IRS may pursue any, and all, available state and federal rights and remedies as provided by law without further order of this Court.

## D.  Statutory fees

Under Subchapter V, there are no statutory fees required to be paid under 28 U.S.C. § 1930.

**VI.**
**Treatment of Claims and Interests Under the Plan**

Claims and interests shall be treated as follows under this Plan.

## A.  <u>Class 1</u> – Secured claim of SL Funding 5, LLC

**Description**.  SL Funding 5, LLC ("SL Funding") has a series of personally guaranteed, secured claims summarized in the table below:

| Debtor | | Allowed Claim at Pet. Date | Int. Rate | Per Diem Interest |
|---|---|---|---|---|
| Primary | Guarantor | | | |
| GFH | Grace C. Hauboldt | $1,393,869.81 | 15.0% | $ 572.82 |
| Grace Hauwin | C. Hauboldt | 66,536.41 | 18.0% | 32.81 |
| Hauwin | Grace C. Hauboldt H. Houbolt | 2,155,741.72 | 8.8% | 519.74 |

| Debtor | | Allowed Claim at Pet. Date | Int. Rate | Per Diem Interest |
|---|---|---|---|---|
| Primary | Guarantor | | | |
| Crossroads | Grace Hauwin C. Hauboldt H. Hauboldt | 139,832.56 | 18.0% | 68.96 |
| Totals | | $3,616,147.94 | | $1,125.37 |

The foregoing claims are more fully described in its Proofs of Claims, underlying loan documents, and financing statements (the "SL Funding Collateral").

SL Funding also is a judgment creditor of an *Amended Final Order Granting Plaintiff SL Funding 5 LLC's Motion for Summary Judgment* (the "SL Funding Judgment"), entered April 11, 2023, by the 61st District Court of Harris County, Texas, against all Debtors. The SL Funding Judgment is secured by a judgment lien on all real property of the Debtors.[12]

**Treatment**.  At the Effective Date, SL Funding will have an Allowed Claim against the Debtors in the aggregate amount of $3,755,980.50 (the "SL Funding Proof of Claim Amount"). Additionally, SL Funding's Post-Petition attorneys' fees and expenses of up to $62,500.00 are approved and deemed reasonable and necessary by confirmation of the Plan, such that SL Funding shall not be required to seek approval of such fees from the bankruptcy court. The actual amount of SL Funding's attorneys' fees and expenses may be added to the principal balance due as of the Effective Date of the Plan.

This allowed claim will bear interest at 10.5%, compounded monthly on the 15th day of the month. Upon default, interest shall increase to a rate of 12.0% per annum. The Reorganized Entity Debtors will pay deferred cash payments on the 15th day of the month next following the Effective Date as follows:

a.  Months 1–6 – Partial interest of $24,257.00;

b.  Months 7–12 – Principal and interest of $40,000.00;

c.  Months 13–17 – Principal and interest of $50,000.00; and

d.  Month 18 – All remaining principal, interest, and other amounts due in the approximate amount of $3,683,707.[13]

Any amount due may be paid prior to the maturity date either: (a) at the closing of a sale of any property, serving as collateral for SL Funding, (b) closing date of the sale of all, or part, of the

---

[12] *See* Tex. Prop. Code § 52.001 (a recorded abstract of judgment constitutes a lien on and attaches to any real property of the defendant, other than real property exempt from seizure or forced sale under the Texas Constitution or other law that is located in the county in which the abstract is recorded and indexed).

[13] *See* EXHIBIT D for a comparative payment schedule of the allowed claim in this and other classes.

business of the Reorganized Entity Debtors, (c) or from the proceeds of other financing received by the Reorganized Entity Debtors.

The SL Funding Judgment and all terms of the pre-Petition Date loan agreements establishing SL Funding's security interests, liens and other Collateral interests and rights in assets of the Debtors, including specifically the following documents attached to SL Funding's Proof of Claim, shall remain in full force and effect (to secure the SL Funding Judgment and otherwise) unless specifically modified by this section of the Plan for treatment of Class 1:

**GFH Loan Documents** –

1.  Deed of Trust, Security Agreement – Financing Statement (8.29.2013) (Victoria County)
2.  Deed of Trust, Security Agreement – Financing Statement (8.29.2013) (Goliad County)
3.  Deed of Trust, Security Agreement – Financing Statement (8.29.2013) (Calhoun County)
4.  Deed of Trust, Security Agreement – Financing Statement (5.21.2015) (Victoria County)
5.  Deed of Trust, Security Agreement – Financing Statement (5.21.2015) (Goliad County)
6.  Deed of Trust, Security Agreement – Financing Statement (5.21.2015) (Calhoun County)
7.  Deed of Trust, Security Agreement – Financing Statement (12.29.2017) (Victoria County)
8.  Deed of Trust, Security Agreement – Financing Statement (12.29.2017) (Goliad County)
9.  Deed of Trust, Security Agreement – Financing Statement (12.29.2017) (Calhoun County)
10. Assignment of Life Insurance Policy (Sovereign Bank) (8.29.2013)
11. Release of Assignment of Life Insurance Policy (Whitney Bank) (9.12.2013)
12. Affidavit (8.29.2013)
13. Subordination of Lease (8.29.2013) (Calhoun County)
14. Subordination of Lease (8.29.2013) (Goliad County)
15. Subordination of Lease (8.29.2013) (Victoria County)
16. Transfer of Lien (8.3.2022) (Calhoun County)
17. Transfer of Lien (8.3.2022) (Goliad County)
18. Transfer of Lien (8.3.2022) (Victoria County)

**Grace/Hauwin Loan Documents** –

1.  Deed of Trust, Security Agreement – Financing Statement (5.21.2015) (Calhoun County)
2.  Modification, Renewal and Extension Agreement (5.21.2016) (Calhoun County)
3.  Deed of Trust, Security Agreement – Financing Statement (5.21.2015) (Goliad County)
4.  Modification, Renewal and Extension Agreement (5.21.2016) (Goliad County)
5.  Deed of Trust, Security Agreement – Financing Statement (5.21.2015) (Victoria County)
6.  Modification, Renewal and Extension Agreement (5.21.2016) (Victoria County)
7.  Deed of Trust, Security Agreement – Financing Statement (12.29.2017) (Calhoun County)
8.  Commercial Security Agreement (Grace Funeral Home, Inc.) (12.19.2017)
9.  Commercial Security Agreement (Grace Funeral Home, Inc.) (12.26.2018)
10. Commercial Security Agreement (Hauwin Enterprises, Inc.) (12.19.2017)
11. Commercial Security Agreement (Hauwin Enterprises, Inc.) (12.26.2018)
12. Commercial Security Agreement (GFH, Ltd.) (12.19.2017)
13. Commercial Security Agreement (GFH, Ltd.) (12.26.2018)
14. Transfer of Lien (8.3.2022) (Calhoun County)
15. Transfer of Lien (8.3.2022) (Goliad County)
16. Transfer of Lien (8.3.2022) (Victoria County)

**Crossroads Loan Documents** –

1. Commercial Security Agreement (6.21.2018)
2. Commercial Security Agreement (2.21.2019)
3. Title Correction Receipt (2017 Ford)
4. Commercial Guaranty (Charles H. Hauboldt III) (6.21.2018)
5. Transfer of Lien (8.3.2022) (Victoria County)

**Hauwin Loan Documents** –

1. U.S. Small Business Administration Authorization (4.29.2016)
2. Deed of Trust and Security Agreement – Hauwin Enterprises, LLC (04.29.2016) (Bee County)
3. Deed of Trust and Security Agreement – Hauwin Enterprises, LLC (04.29.2016) (Victoria County)
4. Deed of Trust and Security Agreement – Charles Henry William Hauboldt, III (4.29.2016) (Victoria County)
5. Security Agreement (Charles Hauboldt) (4.29.2016)
6. Consent of Guarantors (9.29.2016)
7. Texas Certificate of Title (2009 Chrysler)
8. Transfer of Lien (8.3.2022) (Bee County)
9. Transfer of Lien (8.3.2022) (Victoria County)

**UCC Financing Statements**

SL Funding shall retain all security interests, liens, and other Collateral interests and rights in the Collateral or the proceeds of the Collateral to the same extent in the same priority as existed on the Petition Date, and the Debtors further grant to SL Funding a junior lien on the Golden Sunset Cemetery, which shall be subordinate to the ad valorem tax authorities liens and the prior lien of Prosperity Bank. SL Funding shall retain all judgment liens created by the filing of abstracts of judgment to the same extent and in the same priority as existed on the Petition Date. The security interest and liens granted to SL Funding under the Plan and Order Confirming Plan shall constitute valid and duly perfected security interests and liens and either the Order Confirming Plan or the Plan shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests and liens upon the collateral granted to SL Funding hereunder and SL Funding shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If SL Funding shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtors (and the Re-organized Debtors, as applicable) are authorized and shall execute, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon SL Funding's request. SL Funding may, in its discretion, file a copy of either the Order Confirming Plan or the Plan in any filing or recording office in any country or other jurisdiction in which the Debtors (and Reor-ganized Debtors, as appliable) have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of either the Order Confirming Plan or the Plan in accordance with applicable law.

The existing pre-Petition Date loan documents may be replaced, modified or supplemented within the discretion of SL Funding by documents with terms consistent with the existing notes, security

agreements and this Plan, and Debtors shall execute any such documents as requested by SL Funding. In this regard, Debtors shall execute a forbearance agreement that reflects the terms of this Class 1 of the Plan, and a Deed of Trust on a form approved by SL Funding to reflect the granting of a lien on the Golden Sunset Cemetery as set forth herein. Notwithstanding any provision in the Plan stating otherwise, the provisions of the pre-Petition Date loan agreements, as specifically modified by this Class 1 section of the Plan and the forbearance agreement, shall govern all default rights and remedies of SL Funding. In this regard and without limitation on the forgoing statements, the provisions of Articles X related to Plan default and rights to cure, and Articles XI(A) and XI(B) shall not apply to SL Funding or Class 1 Plan treatment.

SL Funding shall also retain the SL Funding Judgment. For the avoidance of doubt, the Hauboldts will not be eligible for a discharge of the Hauboldts' liability under the SL Funding Judgment until the balance due on the SL Funding Judgment and this Class 1 Treatment are paid in full. Upon the final payment of all principal and interest provided herein, SL Funding shall release all liens and encumbrances and file a release of the SL Funding Judgment with the 61st District Court of Harris County, Texas.

Debtors shall provide to SL Funding the following financial reporting and access:

1. Access by SL Funding or its designated agent to Borrower's operations, accounting records, and business records within 5 days after SL Funding's written request. Such access shall be facilitated by the Debtors, with their full support, and continue until SL Funding determines to terminate such access.

2. Monthly financial and accounting statements and reporting in a format and with details satisfactory to SL Funding.

3. Financial, business, and operational information regarding Debtor's financial status, operations, financial information, sale process and marketing, purchase offers, and similar or related data as may be reasonably requested by SL Funding.

4. On March 1, 2025, September 1, 2025, and March 1, 2026, the individual Debtors shall provide sworn personal financial statements on a form and with details satisfactory to SL Funding.

5. On the 15th day of every month, a sworn certification by the Debtors that, as of the certification date: (a) no payment defaults have occurred under the Plan and (b) Debtors are current on all payment of all taxes, insurance, and personnel expense. The certification shall be in a form as required by SL Funding.

Debtors represent and warrant to SL Funding that Debtors do not have any claims against SL Funding or offsets, defenses or counterclaims to the terms of the SL Funding loan documents. Nevertheless, to the extent any determination or assertion is hereafter made that Debtors have any such claims, offsets, defenses or counterclaims, Debtors waive and release SL Funding, its predecessors, successors and assigns, its parents, subsidiaries and affiliates, agents, counsel, trustees, servicers, beneficiaries, certificate holders of SL Funding, and the officers, directors, members, shareholders, partners, employees, attorneys and agents of each of the foregoing from any and all such claims, offsets, defenses and counterclaims, such waiver and release being with full knowledge and understanding of the circumstances and effects of such waiver and release and after

having consulted counsel with respect thereto. Debtors further waive notice of disposition pursuant to Tex. Bus. & Com. Code § 9.611 (waived pursuant to ex. Bus. & Com. Code § 9.624(a)), any defense based on commercial reasonableness of a sale of the SL Funding Collateral. Debtors further waive any right to injunctive relief in state or federal court including, but not limited to, any right to a temporary restraining order or temporary injunction to stop SL Funding's disposition or foreclosure sale of the SL Funding Collateral.

SL Funding's claim shall not be subject to any objections, costs, expenses, offsets, recoupment, avoidance, subrogation, surcharges, or 11 U.S.C. § 506(c) charges.

The Confirmation Order confirming this amended Plan shall constitute an agreement by the Debtors and SL Funding to prohibit Debtors from filing a new voluntary petition in bankruptcy for two years after the date of the Confirmation Order. Any new voluntary bankruptcy filing any of the Debtors shall be in bad faith and violation of the Confirmation Order and this Plan. Nothing in the Debtors' agreement with SL Funding shall be deemed to prevent any, or all, of the Debtors to: (a) modify this Plan pursuant to 11 U.S.C. § 1193, (b) convert their case(s) to Chapter 7, and/or (c) reopen any, or all, of the above-captioned bankruptcy cases for any purpose as allowed under Section XIII(F), on page 49.

Within 15 days after the Confirmation Date, the pre-petition Order Appointing Post-Judgment Receiver and related receivership that was commenced to aid in the enforcement of the SL Funding Judgment shall be terminated; the state court receiver shall be released from appointment as receiver; and receiver's obligations, rights and duties shall be discharged with the receiver's bond returned to the receiver. This Class 1 Plan treatment shall not prevent the parties from requesting relief from the automatic stay and proceeding to request termination of the receiver in conjunction with the Plan confirmation proceedings.

**Impairment**. Impaired.

## B.  Class 2 – Secured claim of Prosperity Bank

**Description**. Prosperity Bank has a series of cross-collateralized secured claims against Grace and Hauwin summarized on the table below:

| Debtor | Loan # | Collateral | Allowed Claim |
|--------|--------|------------|---------------|
| Grace | x3679 | 2007 Cadillac HF6 & 2007 Cadillac hearse | $143,200.31 |
| Hauwin | x1584 | Golden Sunset Cemetery | 182,818.80 |
| Hauwin | x3679 | 2007 Cadillac HFS; 2007 Chrysler TWC; 2007 Cadillac CCH; 2006 Chevrolet PK; 2008 Dodge Caravan; 2000 Ford F-350 | 113,379.39 |
| Hauwin | x5264 | Furniture, equipment & general intangibles | 10,956.59 |
| Hauwin | x6645 | Accounts and general intangibles | 65,230.54 |

| Debtor | Loan # | Collateral | Allowed Claim |
|---|---|---|---|
| C. Hauboldt & H. Hauboldt | x6412 x1635 | 3306 Erwin Ave., Victoria, TX 77901 (the duplex)<br><br>"Lone Star Tavern", 5354 FM 447, Victoria, TX 77905 | 243,179.60 |
| Grace & Hauwin | Prepetition atty. fees | | 29,820.92 |
| Grace & Hauwin | Estimated post-petition atty. fees | | 60,000.00 |
| Totals | | | $848,586.15 |

On October 2, 2024, the Bankruptcy Court entered an Order approving the sale of real property at 3306 Erwin Avenue, Victoria, TX 77901 (ECF no. 146). On October 7, 2024, the closing occurred, and Prosperity Bank was paid $126,831.48 from the sales proceeds.

By October 31, 2024, the Hauboldts expect to enter a contract with Gabe and Tammy Hoskins to sell the assets of the LS Tavern LLC[14] for the sum of $350,000.00, of which $200,000.00 is being paid for the real property at 5454 FM 447, Victoria, TX 77905, and $150,000.00 is being paid for all other assets of LS Tavern LLC. Net proceeds from the sale of the real property are estimated to be approximately $160,000.00.

To secure the Hoskins' performance, the sale described above is contingent upon the Hoskins signing a deed of trust for the benefit of the Hauboldts as to 5454 FM 447, Victoria, TX 77905 and authorizing the filing of a UCC-1 financing statement for all personal property being sold.

**Treatment**.  At the Effective Date, Prosperity Bank will have an Allowed Claim against the Entity Debtors and the Hauboldts in an aggregate amount equal to $848,586.15 (the allowed claim at the Petition Date), less the amount(s) paid to Prosperity Bank as a result of pre-confirmation property sales that were approved by the Bankruptcy Court.

This allowed claim will bear interest at 9.75 percent as calculated over a 48-month amortization period, compounded monthly on the 15th day of the month. By the time of confirmation hearing, it is anticipated that the Bankruptcy Court will have approved sales of the Hauboldts' non-exempt property encumbered by liens of Prosperity Bank; that the sales will have closed; and Prosperity Bank will have received a partial payment of approximately $285,000.00 from the property sales described above. Of the remaining balance (approximately $563,586.15), the Reorganized Entity Debtors will pay deferred cash payments on the 15th day of the month next following the Effective Date as follows:

    a.  Months 1–17 – Principal and Interest of $9,466.00; and

---

[14] LS Tavern LLC is not a debtor in any pending bankruptcy case; however, all equity interests in the company constitute property of the Hauboldts' Bankruptcy Estate.

    c.   Month 18 – All remaining principal and interest due in the approximate amount of $546,993.00.[15]

Any amount due under the promissory notes may be paid prior to the maturity date either: (a) at the closing of a sale of any property, serving as collateral for Prosperity Bank (*see e.g.*, Section X(C), on page 41), (b) closing date of the sale of all, or part, of the business or property of the Reorganized Entity Debtors, (c) or from the proceeds of other financing received by the Reorganized Entity Debtors.

The Hauboldts, guarantee the above payments by the Reorganized Entity Debtors. In the event of an uncured default by the Reorganized Entity Debtors,[16] or failure of the Reorganized Entity Debtors to pay all amounts due to Prosperity Bank by the 36th month following the Effective Date, the Hauboldts shall be immediately liable for payment of all such amounts due to Prosperity Bank. Moreover, the Hauboldts will not be eligible for a discharge of their debts to Prosperity Bank until all amounts to Prosperity Bank are paid in full.

Any amount due under the promissory note may be paid prior to the maturity date either: (a) at the closing of a sale of any property, serving as collateral for Prosperity Bank, (b) closing date of the sale of all, or part, of the business of the Reorganized Entity Debtors, (c) or from the proceeds of other financing received by the Reorganized Entity Debtors. Upon the prepayment of any amount due to Prosperity Bank, monthly payment due to Prosperity Bank will be recalculated in an amount commensurate with the amount of the prepayment.

Prosperity Bank will retain all its liens in all real and personal property until such time as all indebtedness due to Prosperity Bank, including interest and attorneys' fees, is paid in full. As to liens on cash collateral, the Debtors will maintain the right to use the cash collateral so long as all required interest payments are timely made.

Additionally, the Prosperity Bank will be granted an additional lien—to secure performance of the Debtors' obligations to Prosperity Bank—to the real property owned by Hauwin Enterprises, Inc. and described as:

> Replat of Golden Sunset Cemetery, Phase 1, an addition in Victoria County, Texas, according to the established map and plat of said addition of record in Volume 9, Page 001A–B of the Plat Records of Victoria County, Texas [13.0 acres, 3011 Refugio Highway, Victoria, TX 77905].

A failure by the Reorganized Entity Debtors to make a payment to Prosperity Bank pursuant to the terms of the Plan shall be an event of default, and as to the Prosperity Bank, there is an event of

---

[15] *See* EXHIBIT D for a comparative payment schedule of the allowed claim in this and other classes.

It is likely that the principal amount due could be reduced by approximately $286,831.48 as a result of the sale of 3306 Erwin Avenue, Victoria, TX 77901, as described in Section X(C) on page 39, and the anticipated sale of the assets of LS Tavern LLC, as described in Section X(D) on page 42.

[16] *See* Section X(J) on page 33.

default if payment is not received by the 15th day of each month. If there is a default, Prosperity Bank may exercise the remedies for default provided in Sections X(H) and X(I), on page 45.

**Impairment**.  Impaired.

## C.   Class 3 – Secured Claim of BizFund LLC

**Description**.  BizFund LLC filed a proof of claim against the Hauwin estate asserting a secured claim in the amount of $119,206.62.

**Treatment**.  As of the Petition Date, BizFund has an Allowed Claim of $119,206.62. This claim will accrue interest at the rate of 5 percent, compounded monthly from the Petition Date. The Reorganized Entity Debtors will pay interest only in quarterly, deferred cash payments, commencing on the 13th month following the Effective Date and continuing through the 59th month following the Effective Date. These interest-only payments will be $1,566.00. In the 60th month following the Effective Date the Reorganized Entity Debtors will pay a balloon payment equal to all amounts then due to BizFund, which will be approximately $126,871.00.[17]

Any amount due to BizFund may be paid prior to the maturity date either: (a) at the closing of a sale of any property, serving as collateral for BizFund, (b) closing date of the sale of all, or part, of the business or property of the Reorganized Entity Debtors, (c) or from the proceeds of other financing received by the Reorganized Entity Debtors.

BizFund will retain all its liens until all amounts due under the underlying contract have been paid in full.

A failure by the Reorganized Entity Debtors to make a payment to BizFund pursuant to the terms of the Plan shall be an event of default, and as to BizFund, there is an event of default if payment is not received by the 15th day of each month. If there is a default, BizFund may exercise the remedies for default provided in Sections X(H) and X(I), on page 45.

**Impairment**.  Impaired.

## D.   Class 4 – Secured Claim of ODK Capital

**Description**.  ODK Capital, LLC ("ODK") (referred to in Grace's Schedules as On Deck Capital) filed a proof of claim asserting a secured claim of $194,643.35 against Grace and a general unsecured claim of the same amount against C. Hauboldt as personal guarantor.

**Treatment**.  As of the Petition Date, ODK has an Allowed Claim of $194,643.35. This claim will accrue interest at the rate of 5 percent, compounded monthly from the Petition Date. The Reorganized Entity Debtors will pay interest only in quarterly, deferred cash payments, commencing on the 13th month following the Effective Date and continuing through the 59th month following the Effective Date. These interest-only payments will be $2,558.00. In the 60th month following

---

[17] *See* Exhibit D for a comparative payment schedule of the allowed claim in this and other classes.

the Effective Date the Reorganized Entity Debtors will pay a balloon payment equal to all amounts then due to ODK, which will be approximately $207,160.00.[18]

Any amount due to ODK may be paid prior to the maturity date either: (a) at the closing of a sale of any property, serving as collateral for ODK, (b) closing date of the sale of all, or part, of the business or property of the Reorganized Entity Debtors, (c) or from the proceeds of other financing received by the Reorganized Entity Debtors.

ODK will retain all its liens until all amounts due under the underlying contract have been paid in full.

A failure by the Reorganized Entity Debtors to make a payment to ODK pursuant to the terms of the Plan shall be an event of default, and as to ODK, there is an event of default if payment is not received by the 15th day of each month. If there is a default, ODK may exercise the remedies for default provided in Sections X(H) and X(I), on page 45.

**Impairment**.  Impaired.

## E.    Class 5 – Secured Claim of Kubota Credit Corporation

**Description**.  Kubota Credit Corporation filed a secured claim against the Hauwin estate in the amount of $1,670.96 at the Petition Date, bearing interest at 0.97 percent. The basis of this claim is a retail installment contract for the purchase of: (a) a Kubota Z723KH-2-48 50164; (b) a Kubota Z723KH-2-48 50161; and (c) PJ UL 8320 3CVUL2027L2598358. The foregoing machinery also serves as collateral securing payment of the claim. The value of the collateral is at least $12,090.47. At the Petition Date, payments in arrears were $425.45.[19]

**Treatment**.  At the Effective Date, the Reorganized Entity Debtors will pay all amounts in arrears plus interest that has accrued after the Petition Date. Upon this payment, the underlying retail installment contract shall be reinstated, and the Reorganized Entity Debtors will make all future installment payments according to the terms of the prepetition contract.

Kubota Credit Corporation will retain all its liens until all amounts due under the underlying retail installment contract have been paid in full.

**Impairment**.  Unimpaired.

## F.    <u>Class 6</u> – Secured Claim of Texas Service Life Insurance Company

**Description**.  Texas Service Life Insurance Company filed a proof of claim against the Hauwin estate in the amount of $642,340.04 as of the Petition Date and secured by an assignment of a life

---

[18] *See* EXHIBIT D for a comparative payment schedule of the allowed claim in this and other classes.

[19] *See* EXHIBIT D for a comparative payment schedule of the allowed claim in this and other classes.

insurance policy insuring the life of H. Hauboldt for the benefit of C. Hauboldt and a possessory lien as to:

- 20 shares of C. Hauboldt's common stock in Grace, representing 20 percent of the equity of Grace; and

- 20 shares of C. Hauboldt's common stock in Hauwin, representing 20 percent of the equity of Hauwin.

Based on the value of Grace and Hauwin stated in their Schedules,[20] the stock certificates have no value at the Petition Date. Because H. Hauboldt is currently living and it is difficult to value the life insurance policy at this time.

The basis of this claim is a final summary judgment against Hauwin, with a post-judgment interest rate of 7.75 percent per annum.

**Treatment**. Texas Service Life Insurance Company ("TSL") has an Allowed Claim of $642,340.04 as of the Petition Date. Because its collateral will likely have value when the Reorganized Entities are sold as contemplated under the Plan, its claim will be treated in a bifurcated manner, as follows:

1. TSL will be paid 25 percent of its Allowed Claim in the same manner as holders of general, unsecured claims in Class 13 as set forth in Section VI(K), on page 36. The amount of each of the 17 quarterly payments described in Section VI(K) that will be paid to TSL Will be approximately $9,446.18;

2. The "bonus" described in Section VI(K), on page 36, will apply to the claim of TSL;

3. Additionally, at the closing of the sale of the Reorganized Entity Debtors, TSL will receive an additional amount in recognition of the value of its collateral at the time of the said sale (the "Collateral Sale Valuation"). The Collateral Valuation will be calculated from the net sales proceeds after payment of all closing costs, taxes, outstanding, allowed administrative expense claims, and allowed secured claims in Classes 1 through 5 that will be paid at the closing of such sale as 20 percent of the greater of –

    a. 100 percent of the amount allocated to the assets of Hauwin and Grace that are sold, or
    b. 49 percent of the total sale value of all assets of the Reorganized Entity Debtors, if all assets of the Reorganized Entity Debtors are sold.[21]

    The Collateral Sale Valuation may not exceed –

---

[20] No. 24-60026, ECF no. 6; No. 24-60027, ECF no. 6.

[21] Total scheduled assets of Grace and Hauwin compared to the total scheduled assets of all Entity Debtors.

a. The Allowed Claim amount at the Petition Date—$642,340.04;

b. Plus interest at the rate of 7.75 percent on all unpaid amounts after the Petition Date;

c. Less payments received under subparagraph 1 prior to the sale of the Reorganized Entity Debtors;

4. Any amount due under the Collateral Sale Valuation will be paid to TSL before any "bonus" is paid to the holder of a general unsecured claim in Class 13; and

5. If, in the event of the death of H. Hauboldt within the 60 months following the Effective Date, TSL may satisfy all remaining amounts due to it pursuant to its Allowed Claim, plus all interest and attorneys' fees as may be allowed under 11 U.S.C. § 506 from the proceeds of the assigned life insurance policy. All remaining amounts shall vest with the named beneficiary of the said life insurance policy.

TSL shall retain its liens until the later of: (1) the closing of the sale of the Reorganized Entity Debtor and the payment of all amounts set forth herein, or (2) the final payment to holders of Allowed Claims in Class 13 in the 36th month following the Effective Date and the assignment of life insurance for 60 months following the Effective Date. At the Effective Date, a substitute stock certificate, representing an equivalent interest in the Reorganized Entity Debtors will be issued and exchanged with the existing stock certificates in TSL's possession. Further, when the said liens expire, the Reorganized Entity Debtors will be authorized to cancel the stock certificates in the possession of Texas Service Life.

**Impairment**. Impaired.

## G. <u>Class 7</u> – Secured Claim of Toyota Motor Credit

**Description**. Toyota Motor Credit filed a proof of claim against the Hauboldt estate in the secured amount of $5,251.40. bearing interest at 8.99 percent. The basis of this claim is a financing agreement for the purchase of a 2017 Lexus ES350 (VIN JTHBK1GG4H2251890). The foregoing vehicle also serves as collateral securing payment of the claim. The value of the collateral is approximately $20,000.00.

**Treatment**. At the Effective Date, the Reorganized Individual Debtors will pay all amounts in arrears (if any) plus interest that has accrued after the Petition Date. Upon this payment, the underlying financing agreement shall be reinstated, and the Reorganized Individual Debtors will make all future payments according to the terms of the prepetition contract.

Toyota Motor Credit will retain all its liens until all amounts due under the underlying retail installment contract have been paid in full.

**Impairment**. Unimpaired.

## H.  Class 8 – Secured Claim of Ally Bank

**Description**.  Ally Bank filed a proof of claim against the Hauboldt estate in the secured amount of $9,121.01, bearing interest at 8.94 percent. The basis of this claim is a secured note for the purchase of a 2019 Dodge Grand Caravan SXT (VIN 2C4RDGCG7KR696328). The foregoing property also serves as collateral securing payment of the claim. The value of the collateral is approximately $16,350.00.

**Treatment**.  At the Effective Date, the Reorganized Individual Debtors will pay all amounts in arrears (if any) plus interest that has accrued after the Petition Date. Upon this payment, the secured loan agreement shall be reinstated, and the Reorganized Individual Debtors will make all future payments according to the terms of the prepetition contract.

Ally Bank will retain all its liens until all amounts due under the underlying secured loan agreement has been paid in full.

**Impairment**.  Unimpaired.

## I.  Class 9 – Secured Claim of NewFirst National Bank

**Description**.  NewFirst National Bank filed a proof of claim against the Hauboldt estate in the secured amount of $118,209.67, bearing interest at 5.00 percent. The basis of this claim is a secured note for the purchase of real property located at 403 Fulton Avenue, Rockport, Texas 78382.

**Treatment**.  On October 2, 2024, the Bankruptcy Court entered an Order approving the sale of the above-described real property (ECF no. 145). The closing occurred on October 18, 2024, and NewFirst National Bank was paid $120,813.64, which included $635.00 in its attorneys' fees. This paid the loan due to NewFirst National Bank in its entirety; therefore, *Class 9 shall be considered an empty class for purposes of confirmation*.

**Impairment**.  n/a.

## J.  Class 10 – Secured Claim of Rocket Mortgage, LLC

**Description**.  Rocket Mortgage, LLC filed a proof of claim against the Hauboldt estate in the secured amount of $225,910.41, bearing interest at 3.99 percent. The basis of this claim is a secured note for the purchase of the Debtors' homestead located at 209 Woodridge Drive, Victoria, Texas 77904. The foregoing property also serves as collateral securing payment of the claim. The value of the collateral is approximately $340,000.00.

**Treatment**.  At the Effective Date, the Reorganized Individual Debtors will pay all amounts in arrears (if any) plus interest that has accrued after the Petition Date. Upon this payment, the secured loan agreement shall be reinstated, and the Reorganized Individual Debtors will make all future payments according to the terms of the prepetition contract.

Rocket Mortgage, LLC will retain all its liens until all amounts due under the underlying secured loan agreement has been paid in full.

**Impairment**.  Unimpaired.

## K.   Class 11 – Secured Claim of Velocity Credit Union

**Description**.  Velocity Credit Union filed a proof of claim against the Hauboldt estate in the secured amount of $27,045.84, bearing interest at 6.14 percent. The basis of this claim is a financing agreement for the purchase of a 2021 Lexus ES vehicle, VIN 58ADA1C13MU002496. The foregoing vehicle also serves as collateral securing payment of the claim. The value of the collateral is approximately $38,000.

**Treatment**.  At the Effective Date, the Reorganized Individual Debtors will pay all amounts in arrears (if any) plus interest that has accrued after the Petition Date. Upon this payment, the underlying financing agreement shall be reinstated, and the Reorganized Individual Debtors will make all future payments according to the terms of the prepetition contract.

Velocity Credit Union will retain all its liens until all amounts due under the underlying retail installment contract have been paid in full.

**Impairment**.  Unimpaired

## L.   Class 12 – Priority Claims

**Description**.  Class 12 is an empty class. Except for administrative priority claims and certain unclassified claims described in Section V(C), above, Debtor has no creditors with claims that would be entitled to priority under 11 U.S.C. § 507.

**Treatment**.  If a claim is allowed in this class, holders of such claims will be paid in full, in deferred cash payments, from the Debtors' future Disposable Income after Administrative claims, Priority Tax Claims, and Allowed Claims in Classes 1 through 3 are paid in full.

**Impairment**.  n/a.

## M.   Class 13 – General Unsecured Claims

**Description**.  Class 13 consists of the general, unsecured claims listed in EXHIBIT C as well as those portions of tax claims and secured claims described above that are treated as general unsecured claims in Class 11.

**Treatment**.  Holders of Allowed Claims in Class 13 will be paid 25 percent of their Allowed Claims, in 17 quarterly cash payments, aggregating approximately $21,319.00[22] at the beginning of each quarter, commencing in 13th month following the Effective Date and payable quarterly thereafter with a final, payment in the 60th month following the Effective Date.[23] Additionally, upon the sale of the Reorganized Debtor Entities by Month 18, holders of Allowed Claims in Class

---

[22] 25% of total claims on EXHIBIT C ÷ 17 quarters.

[23] *See* EXHIBIT D for a comparative payment schedule of the allowed claim in this and other classes.

13 will receive 5 percent of the net amount realized after payment of all closing costs, taxes, and allowed secured claims in Classes 1 through 6 that will be paid at the closing of such sale.

**Impairment**.  Impaired.

## N.  <u>Class 14</u> – Interests of the Equity Holders of the Entity Debtors

**Description**.  Class 12 consists of the equity interests of: (a) the 99 percent limited partnership interest of C. Hauboldt in GFH, Ltd., (b) the common stock in Grace and Hauwin owned by C. Hauboldt, and the (c) limited liability company membership interests in Crossroads held by C. Hauboldt and H. Hauboldt.

**Treatment**.  The Hauboldts will retain all partnership interests, common stock, and membership interests in the GFH, Ltd., Grace, Hauwin, and Crossroads. Until all Allowed Claims are satisfied, they shall be entitled to no distributions except to pay the income tax liability of the entities that may be passed through to them, which are attributable to their specific ownership in GFH, Ltd., Grace, Hauwin, and Crossroads.[24]

**Impairment**.  Impaired.

## O.  <u>Class 15</u> – Interests of the Individual Debtors in Property of the Estate

**Description**.  The property of the Estate includes all real and personal property listed on Debtors' Schedules, regardless of whether the said property is exempt or non-exempt. *See also* 11 U.S.C. § 541 (providing for a full description of property of the estate).

**Treatment**.  All property of the Estate shall vest with the Reorganized Individual Debtors on the Effective Date, subject to the liens and security interests of Secured Creditors, as set forth and described in Section V and in Classes 2 and 5 through 9. The Reorganized Individual Debtors shall continue to be bound by the terms of this Plan after the Effective Date.

In the event this case is converted to Chapter 7 after the Effective Date or a confirmed plan is modified pursuant to 11 U.S.C. § 1193, property and causes of action that have vested with the Reorganized Individual Debtors are subject to being administered by a trustee in Chapter 7 or under a modified plan.

**Impairment**.  Impaired.

---

[24] The Hauboldts will receive an annual salary of $100,000.00, each from Grace Funeral Homes and Cemetery, Inc.

# VII.
# Allowance and Disallowance of Claims

## A.   Disputed claims

A *Disputed Claim* is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either:

1. a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

2. no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

## B.   Objections to claims

Claims objections must be made by:

1. For a proof of claim filed prior to the Effective Date, not later than 30 days after the Effective Date; or

2. For a proof of claim filed after the Effective Date but before the Bar Date, not later than 30 days after the date the proof of claim is filed.

## C.   Interim distributions on Allowed Claims

Interim distributions on Allowed Claims will be made on a *pro rata* basis based all undisputed, Allowed Claims, plus the amounts claimed in any proofs of claims that are subject to claim objections. Once all claims' objections are resolved, a final distribution on Allowed Claims will be made.

## D.   Delay of distributions on a Disputed Claim

No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final, non-appealable order.

## E.   Anticipated claims objections

The Debtors reserve the right to object to the proof of claim filed by Great America Financial Services (Grace claim # 7). The Debtors further reserves the right to object to other proofs of claims that may be filed prior to, or after, the applicable Claims Bar Dates.

## F.   Settlement of Disputed Claims

The Debtors will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# VIII.
## Provisions for Executory Contracts and Unexpired Leases

### A.   Assumed executory contracts and unexpired leases

The Debtors assume, and if appliable assign, the following executory contracts and unexpired leases as of the Effective Date:

| Description | Party |
|---|---|
| **Grace** | |
| I.T. services contract | Synergistic, LLC |
| Lease of storage unit at 201 Sam Houston Drive, Victoria, TX (unit 126) | Alamo Mini-Storage |
| Lease of 477 and 479 Waco Circle, Victoria, TX 77904 | Victoria Regional Airport |
| Lease of Port Lavaca Chapel to Grace Speaks Ministries | Grace Speaks Ministries |
| **Hauwin** | |
| Lease of Kubota L47 4WD tractor; TL 1800V front loader; and BT100B backhoe | Victoria Oliver Co., Inc. |
| **Crossroads** | |
| Contract for biohazard waste handling supplies | Stericycle, Inc. |
| **Hauboldts** | |
| Lease of 303 Mesquite St., Fulton, TX 78358 | Dancing Girl, LLC |
| Lease of Brown Bag Saloon, 8609 North Navarro, Victoria, TX 77904 | Starboard Corporation |
| Agent Agreement between C. Hauboldt *and* | Texas Service Life Insurance Company |
| Agent Agreement between C. Hauboldt *and* | Texas Service Life Insurance Company |

Upon information and belief, there are no monetary defaults regarding the above executory contracts and unexpired leases to be assumed.

Objections to the assumption and assignment of the foregoing unexpired leases and/or executory contracts, the proposed cure of any defaults, or the adequacy of assurance of performance must be filed and served within the deadline for objecting to confirmation of the Plan, unless the Court has set an earlier time.

### B.   Rejected executory contracts and unexpired leases

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date under Section VIII(A) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after entry of the Confirmation Order.

## IX.
## Post-Confirmation Management

After the Confirmation Date, C. Hauboldt and H. Hauboldt will comprise the management of the Reorganized Entity Debtors. Prior to the sale of all, or part, of the Reorganized Entity Debtors, the Hauboldts will remain in charge of the day-to-day management of the Reorganized Entity Debtors and may not be removed from such role prior to the time they are eligible for a discharge as provided for in Section XII(A), on page 47, except upon order of the Bankruptcy Court and after a showing of criminal activity, breach of fiduciary duty, or gross negligence. After the sale of all, or part of the Reorganized Entity Debtors, the Hauboldts' role in the management of any sold entity will be at the sole discretion of the purchaser(s).

As compensation for their management services, both C. Hauboldt and H. Hauboldt shall each be entitled to an annual salary of $100,000.00, paid in by the Reorganized Entity Debtors, commencing on the Effective Date, in installments on the Reorganized Entity Debtors' regular payroll cycle.[25]

As to the Reorganized Individual Debtors, the Hauboldts, individually, will remain in charge of their personal affairs and of the property vested in their control after the Confirmation Date.

## X.
## Means for Implementation of the Plan

### A.   Corporate Reorganization

At the time of confirmation, GFH, Grace, Hauwin, and Crossroads will seek to merge their bankruptcy estates into two entities: (1) Grace Funeral Home, Inc. and (2) GFH, Ltd. If allowed, such corporate reorganization will be effective on the Effective Date. Further, the name of Grace Funeral Home, Inc., will be changed to GRACE FUNERAL HOMES AND CEMETERIES, INC.—in accordance with Chapter 10 of the Texas Business Organizations Code.

After the corporate reorganization, GFH, Ltd. will own, manage, and operate all the real property currently owned by GFH, Ltd. and Hauwin. All personal property belonging to Grace, Hauwin, and Crossroads will be transferred to Grace Funeral Homes and Cemeteries, Inc., which will also conduct all business operations of the Reorganized Debtor Entities. All liabilities, liens, and encumbrances attached to any real or personal property will likewise remain attached to the underlying property and become the liability of either GFH, Ltd. or Grace Funeral Homes and

---

[25] The Reorganized Entity Debtor shall withhold all federal taxes from the salaries of C. Hauboldt and H. Hauboldt as set forth in *IRS Publication 15, (Circular E), Employer's Tax Guide*.

Cemeteries, Inc., as the case may be. All unsecured liabilities of Hauwin and Crossroads will be transferred to Grace Funeral Homes and Cemeteries, Inc.

The Debtors, in the exercise of their business judgment, assert that this corporate reorganization of the Entity Debtors' estates is in the best interests of the creditors of the Entity Debtors because it will: (a) eliminate inter-company debts, (b) allow for all general unsecured creditors to be treated equally, (c) in the event of a liquidation, allow the general unsecured creditors of Grace, Hauwin, and Crossroads to benefit from the equity GFH has in its real property, and (d) provide for more favorable tax treatment of the Entity Debtors' capital gains and losses.

## B.   Treatment of retained prepetition liens

All liens perfected prior to the Petition Date under applicable non-bankruptcy law that are specifically retained by any provision of this Plan—in particular, in Section VI—shall maintain the same priority existing under applicable non-bankruptcy law as of the Petition Date. Nothing in this Plan shall alter the priority of any retained pre-petition lien.

## C.   Sales of real and personal property not needed for an effective reorganization

### 1.   General

If not approved prior to the Confirmation Date, the Hauboldts will sell the following real property of their Estate:

| Description | Scheduled Value | Lienholder(s) | Sale Contract |
|---|---|---|---|
| 403 Fulton Ave., Rockport, TX 78382 | 200,000.00 | Aransas County NewFirst National Bank | $185,000.00 – Darrell Brent Gamble and Misty Gamble. |
| 3613 Cypress St., Victoria, TX 77901 | 150,000.00 | Victoria County SL Funding | Expected sales contract for $160,000 with the current lessees, Charisse Gregg and Mark Church, on, or before, the Confirmation Date |
| 3306 Erwin Ave., Victoria, TX 77901 Duplex | 180,000.00 | Victoria County Prosperity Bank | $155,000.00 – Laura Stehling and Nelson Stehling |

On August 27, 2024, the Hauboldts filed a Motion for Authorization to Sell 403 Fulton Avenue to Darrell Brent Gamble and Misty Gamble for $185,000.00 (ECF no. 117). On August 30, 2024, the Hauboldts filed a Motion for Authorization to sell 3306 Erwin Avenue to Lauran Stehling and Nelson Stehling for $155,000.00 (ECF no. 119). These sales were approved on October 2, 2024 (ECF nos. 146, 146). A closing was held October 4, 2024, and net proceeds to the sellers of $48,274.07 were deposited into the Hoffman and Saweris, PC IOLTA account for distribution as set forth in Section 3, below.

Additionally, the Hauboldts reserve the right to file motions to approve the sales of other real property prior to the Confirmation Hearing. If any sale of real property is not approved prior the Confirmation Hearing, they will seek formal approval of the sale as part of the confirmation of this

Plan. The Hauboldts are presently in negotiations with two potential buyers for the 3613 Cypress Street property.

After the Confirmation Date, the Hauboldts will exercise their reasonable business judgment to determine the manner in which the real property will be sold—*e.g.*, private sale through broker, auction, etc. In selling any of the above real property, the Hauboldts shall file a notice of their intention to sell the property and specify the manner in which the property will be sold. Creditors and Parties in interest will have 14 days to file an objection to the manner of the proposed sale(s) which the Court may consider on an expedited basis.

Once a conditional sales contract is signed, the Hauboldts shall file a notice reporting the terms of the sale. Creditors and Parties in interest will have 14 days to file an objection, which the Court may consider on an expedited basis. If no objection is timely filed, the Hauboldts will be authorized to complete the sale and apply the proceeds to the satisfaction of the Allowed Claims in this Plan, particularly the allowed claims in Classes 1 and 2.

**2. Contingent sale through a broker or auctioneer**

Notwithstanding the above, if any of the property described in this Section is not sold through a private sale within the third month following the Effective Date, then the property must be listed with a broker or auctioneer for sale within a commercially reasonable timeframe.

**3. Uses of sales proceeds**

For any real or personal property sold under this Section, the sales proceeds will be applied in the following order:

    a. For payment of any closing costs or standard broker or auctioneer commissions,

    b. For payment of any debts secured by perfected liens on the property being sold, in the order of priority assigned by applicable non-bankruptcy law,

    c. For payment of any allowed administrative expenses set forth in Section V(B), on page 16, and

    d. For payment of all other Allowed Claims, whether they are Priority Tax Claims or classified in Section VI, in accordance with the terms of the Plan.

**4. Sales of other real and personal property**

After the Effective Date, the Reorganized Debtors may, in their sole business judgment, sell any other property that has vested with the Reorganized Debtors and apply the proceeds from the sale to payment of Allowed Claims under this Plan ahead of the schedule set forth above. Similarly, the Reorganized Debtors may use property vested with the Reorganized Debtors as collateral for a loan(s), the proceeds of which will be used to pay Allowed Claims. In doing so, the Reorganized Debtors shall use the procedures set forth above in this Section.

## D. Contribution of Proceeds from Sale of Assets of LS Tavern LLC

By October 31, 2024, the Hauboldts expect to enter into a contract with Gabe and Tammy Hoskins to sell the assets of the LS Tavern LLC[26] for the sum of $350,000.00, of which $200,000.00 is being paid for the real property at 5454 FM 447, Victoria, TX 77905, and $150,000.00 is being paid for all other assets of LS Tavern LLC. Under the terms of the contract, the Hoskins' will pay $250,000.00 at the closing, with the remaining $100,000.00 to be paid in monthly installment payments of either $5,000.00, $10,000.00, or $15,000.00, the exact amount which will be based upon the monthly income generated by the Lone Star Tavern's business operations. The installment payments will bear interest at the prime rate as published in the *Wall Street Journal* at the date of the closing.

To secure the Hoskins' performance, the sale described above is contingent upon the Hoskins signing a deed of trust for the benefit of the Hauboldts as to 5454 FM 447, Victoria, TX 77905 and authorizing the filing of a UCC-1 financing statement for all personal property being sold.

After payment of all property taxes due and closing costs, the sales proceeds will be applied to the satisfaction of the debts provided in this Plan as follows:

1. All net proceeds from the sale of the real property—estimated to be approximately $160,000.00—will be paid to Prosperity Bank, which will also secure Prosperity Bank's release of its lien as to the real property owned by LS Tavern LLC—5454 FM 447, Victoria, TX 77905;

2. Payment of any outstanding administrative expense claims of the Hauboldts;

3. Payment of any outstanding tax claims of the IRS, allowed in Section V; and

4. Payment of all other allowed claims as set forth in Section VI.

## E. Sale of Reorganized Debtor Entities

It is contemplated that the Hauboldts will either: (a) sell all, or part, of their equity in the Reorganized Debtor Entity to a third party, or (b) sell the assets of the Reorganized Debtor Entity to a third party and apply the proceeds to the satisfaction of Allowed Claims in this Plan. Absent a written agreement to the contrary with the holders of unpaid Allowed Claims in Classes 1 and 2, the closing of this sale must occur within 18 months of the Effective Date.

Management asserts that it will take approximately 12 months following the Effective Date for the Reorganized Entity Debtors to prepare for the sale process and have them in the best financial position to maximize their value for the ultimate benefit of their creditors and equity holders. Management believes there are 4–5 likely potential buyers, who are sophisticated, established operators in the funeral industry, which would desire to own and operate an integrated funeral and cemetery

---

[26] LS Tavern LLC is not a debtor in any pending bankruptcy case; however, all equity interests in the company constitute property of the Hauboldts' Bankruptcy Estate.

business in the greater Victoria area. With their industry connections, the Hauboldts already have relationships with these potential buyers and can accomplish the sale without the need to employ brokers.

Once a proposed sale is agreed to by the parties, the Hauboldts shall file a notice reporting the terms of the sale. Creditors and Parties in interest will have 14 days to file an objection, which the Court may consider on an expedited basis. If no objection is timely filed, the Hauboldts will be authorized to complete the sale and apply the proceeds to the satisfaction of the Allowed Claims in this Plan, particularly the allowed claims in Classes 1 and 2.

## F.   Sources of Funds for Distribution

In addition to the sales of property described above, Allowed Claims of the Reorganized Entity Debtors will be paid from the Reorganized Entity Debtors' Disposable Income as set forth in EXHIBIT B. Allowed Claims of the Reorganized Individual Debtors will be paid from their net salaries and income from the operation of the "Brown Bag Saloon" described in Section IX and provided for in EXHIBIT B.

## G.   Distributions by Debtor under a consensual Plan

If the Plan is confirmed as a consensual plan, the service of the Subchapter V Trustee shall terminate upon the Effective Date, and all Plan payments of Allowed Claims shall be made by the Reorganized Debtors.

## H.   Distributions by Debtor under a nonconsensual Plan

If the Plan is confirmed as a nonconsensual plan, the Reorganized Debtors will be the sole and exclusive disbursing agent for purposes of making any and all Plan payments, and the services of the Subchapter V Trustee will terminate immediately upon the signing of a Confirmation Order, and the Subchapter V Trustee shall be entitled to no further compensation following the date of the Confirmation Order.

## I.   Termination of State Court Turnover Receivership

Within 15 days after the Confirmation Date, the pre-petition Order Appointing Post-Judgment Receiver and related turnover receivership that was commenced to aid in the enforcement of the SL Funding Judgment shall be terminated; the state court receiver shall be released from appointment as turnover receiver; and the turnover receiver's obligations, rights and duties shall be discharged with the receiver's bond returned to the turnover receiver. Nothing in this Plan shall prevent the SL Funding or other party in interest from seeking relief in the state court to formally terminate the turnover receivership without any further order from the Bankruptcy Court.

## J.   Execution of all Plan Documents

The Reorganized Debtors are authorized to negotiate and execute on, or after, the Effective Date all Plan Documents called for in this Plan.

## K.   Tax elections

At any time prior to the completion of this Plan, the Reorganized Entity Debtors, in its business judgment, may elect to be treated as either a *S-Corporation* or *C-Corporation*, as defined in 26 U.S.C. § 1361(a), for federal income taxation purposes.

## L.   Default under the Plan

When a required payment to a Creditor under the Plan becomes delinquent, the Creditor may file a Notice of Default. Any default may be cured by: (a) providing payment to the aggrieved Creditor within 15 days of the Notice of Default, (b) proposing a modified plan pursuant to 11 U.S.C. § 1193, or (c) objecting to any Notice of Default within 15 days and obtaining a subsequent ruling from the Court declaring there was no default.

If the Plan is confirmed as a consensual plan, the deadline to propose a modification to the Plan is the time of Substantial Consummation. If the Plan is confirmed as a nonconsensual plan, the deadline to propose a modification to the Plan shall be five years after the Confirmation Date.

## M.   Event of Uncured Default

In the event of a default that cannot be cured through the modification of the Plan under § 1193 the Debtor agrees to: (1) convert the affected case(s) to a liquidation under Chapter 7, or (2) not oppose a motion to dismiss the bankruptcy case filed by the U.S. Trustee, the Subchapter V Trustee, or any Creditor holding an Allowed Claim with delinquent payments. Further, the rights and remedies of secured creditors holding validly perfected liens on any collateral constituting property of the estates will be preserved in accordance with applicable non-bankruptcy law.

The Debtors assert that the treatment of defaults provided herein is fair and equitable to all creditors.

## XI.
## Effect of Confirmation

## A.   Binding Effect of Confirmation

Upon confirmation and the occurrence of the Effective Date, the provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtors based on any transaction or other activity of any kind that occurred prior to the Effective Date except as permitted under the Plan and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

## B.   Injunction

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtors' Bankruptcy Estates or the Debtors, including the

Receiver (Seth Kretzer), shall be permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or the Debtors' Bankruptcy Estates, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or the Debtors' Bankruptcy Estates on account of any such Claim and (iv) asserting any right of set-off, subrogation or recoupment of any kind against any obligation due from the Debtors or the Debtors' Bankruptcy Estates on account of any such Claim; provided, however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim in Classes 1–12 shall be entitled to enforce his, her or its rights under the Plan and Plan Documents.

## C. Vesting of Assets

All assets of the Bankruptcy Estates shall vest with the Reorganized Debtors on the Effective Date, subject to the liens and security interests of Secured Creditors, as set forth and described in Classes 1 through 11. The Reorganized Debtors shall continue to be bound by the terms of this Plan after the Effective Date.

## D. Exculpation and Limitation of Liability

Neither the Debtors nor any person or entity released as part of a settlement agreement approved by final order entered by any Judge of the United States Bankruptcy Court for the Southern District of Texas will have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, any actions taken in the Debtors' Bankruptcy Cases, or the pursuit of confirmation of the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan Documents, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor or any person or entity released as part of a settlement agreement approved by final order entered by any Judge of the United States Bankruptcy Court for the Southern District of Texas or its Partners for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan Documents.

## E. Employment of professionals after the Effective Date

After the Effective Date, the Reorganized Debtors, may employ professionals to assist in effectuating the Confirmed Plan without the need to retain them pursuant to Bankruptcy Court Order.

# XII.
# Discharge

## A.  Charles Hauboldt and Heather Hauboldt

If the Debtors' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in 11 U.S.C. § 1141(d)(1)(A). The Debtor will not be discharged from any debt:

(i)  imposed by this Plan; or

(ii)  excepted from discharge under 11 U.S.C. § 523(a), except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtors' Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in 11 U.S.C. § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)  on which the last payment is due after the first 3 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or

(ii)  excepted from discharge under 11 U.S.C. § 523(a), except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## B.  GFH, Ltd.

If the Debtors' Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

If the Debtors' Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)  on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii)  excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## C.  Grace Funeral Home, Inc.; Hauwin Enterprises, Inc.; and Crossroads Mortuary Services, LLC

If the Debtors' Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)   imposed by this Plan; or

(ii)  to the extent provided in § 1141(d)(6).

If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)   on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii)  excepted from discharge under 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

The Debtors shall not be discharged from any debt imposed by the Plan. After the Effective Date of the Plan allowed claims against the Debtors arising pre-petition will be limited to the debts imposed by the Plan.

## XIII.
## Other Provisions

### A.   General

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, any of the Debtors' Bankruptcy Estates or any of the Debtors will be permanently enjoined, on and after the Consummation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii), the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors or any of the Debtors' Bankruptcy Estates, (iii) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors or any of the Debtors' Bankruptcy Estates on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Debtors or any of the Debtors' Bankruptcy Estates on account of any such Claim; provided, however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under the Plan and Plan Documents.

### B.   Retention and Enforcement of Causes of Action.

All claims and causes of action of the Debtors shall be retained by the Reorganized Entity Debtors and/or the Reorganized Individual Debtors.

### C.   Employment of professionals after the Effective Date

Subject to the approval of the Court under the standards set forth in 11 U.S.C. § 327, the Reorganized Entity Debtors and the Reorganized Individual Debtors may employ professionals to assist them in effectuating the Confirmed Plan.

## D. Final Decree

Once the estates have been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtors, or such other party as the Court shall designate in the Plan Confirmation Order, may file a motion to administratively close the case, subject to it being reopened by any of the Reorganized Debtors, the U.S. Trustee, or any other party in interest for the purpose of seeking relief within the Bankruptcy Court's continuing jurisdiction over the Confirmed Plan.

## E. Retention of Jurisdiction

Under 11 U.S.C. §§ 105(a) and 1142, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

a. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the allowance or priority of Claims or Interests;

b. Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims;

c. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

d. Effectuate performance of and payments under the provisions of the Plan;

e. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

f. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

g. Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

h. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

i. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

j. Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or

other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

k. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtors' Bankruptcy Cases;

l. Hear and determine matters concerning state, local, and federal taxes in accordance with 11 U.S.C. §§ 346, 505, and 1146;

m. Hear and determine all matters related to the property of the Debtors' Bankruptcy Estates from and after the Consummation Date;

n. Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code;

o. To consider and rule upon any and all motions filed by the Debtors to sell any of its real property pursuant to 11 U.S.C. § 363;

p. To consider and rule upon any motion for a discharge filed by either the Reorganized Individual Debtors or the Reorganized Entity Debtors, regardless of whether the Bankruptcy Case was previously closed; and

q. Enter a final decree closing the Debtors' Bankruptcy Cases.

## F. Reservations of right to amend Plan

The Debtors reserve the right to amend this Plan at any time prior to Confirmation in accordance with 11 U.S.C. § 1193(a). The Debtors reserve all rights to amend this Plan after Confirmation in accordance with 11 U.S.C. §§ 1193(b) and 1193(c).

## XIV.
## Conclusion

The proposed Plan affords the holders of Allowed Claims the maximum potential for realization of the Debtors' assets without the uncertainty of the ultimate results of a liquidation of the Debtors' nonexempt property and is fair and equitable to the holders of all Allowed Claims. If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtors under Chapter 7; and (iv) dismissal of the Chapter 11 cases.

DATED: October 28, 2024.

GFH, LTD.

/s/ *Charles Henry William Hauboldt III*
By: Charles Henry William Hauboldt III
President, GFH 1, LLC
Its General Partner

GRACE FUNERAL HOME, INC.

PENDERGRAFT & SIMON, LLP

/s/ *William P. Haddock*
Leonard H. Simon
 Texas Bar No. 18387400
 S.D. Tex. Adm. No. 8200
William P. Haddock
 Texas Bar No. 00793875

/s/ *Charles Henry William Hauboldt III*
By: Charles Henry William Hauboldt III
President

HAUWIN ENTERPRISES, INC.

/s/ *Charles Henry William Hauboldt III*
By: Charles Henry William Hauboldt III
President

CROSSROADS MORTUARY SERVICES,
LLC

/s/ *Charles Henry William Hauboldt III*
By: Charles Henry William Hauboldt III
President

  S.D. Tex. Adm. No. 19637
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for GFH, Ltd., Grace Funeral Home,
Inc., Hauwin Enterprises, Inc., and Crossroads
Mortuary Services, LLC*

/s/ *Charles Henry William Hauboldt III*
By: Charles Henry William Hauboldt III
Individually

/s/ *Heather Denise Hauboldt*
By: Heather Denise Hauboldt
Individually

HOFFMAN & SAWERIS, PC

/s/ *Matthew Hoffman*
Matthew Hoffman
 Texas Bar No. 09779500
 S.D. Tex. Adm. No. 3454
Alan B. Saweris
 Texas Bar No. 24075022
 S.D. Tex. Adm. No. 1850547
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
Tel. 713.654.9990

*Counsel for Charles Henry William Hauboldt
III and Heather Denise Hauboldt*

<span style="color:red">Exhibit A</span>
Liquidation Analysis

**Hauwin Entreprises Grace, et al**
**Liquidation Analysis**
**7/30/24**

| ASSETS | Hauwin | Grace | Crossroads | GFH, LTD | Total | % | Net Liquidation Value | Scheduled Value of Real Estate |
|---|---|---|---|---|---|---|---|---|
| Cash | 22,556.42 | 2,922.04 | 1,124.88 | | 26,603.34 | 100% | 26,603.34 | |
| Accounts Receivable | 198,591.63 | 137,545.53 | 60,053.16 | | 396,190.32 | 80% | 316,952.26 | |
| Inventory | 3,500.00 | 19,100.00 | 3,800.00 | | 26,400.00 | 10% | 2,640.00 | |
| Furniture, Fixtures and Experience | 8,800.00 | 24,600.00 | 1,700.00 | | 35,100.00 | 10% | 3,510.00 | |
| Vehicles | 11,787.00 | 128,865.00 | | | 140,652.00 | 30% | 42,195.60 | |
| Other machinery and equipment | 117,804.00 | 548,075.00 | 13,400.00 | | 679,279.00 | 50% | 339,639.50 | |
| **Real Estate** | | | | | | | | |
| Golden Sunset Cemetery | 309,965.00 | | | | 309,965.00 p | 60% | 185,979.00 | 309,965.00 |
| Memorial Park Cemetery | 600,470.00 | | | | 600,470.00 | 60% | 360,282.00 | 600,470.00 |
| Memory Garden Cemetery & Funeral Home | 940,890.00 | | | | 940,890.00 | 60% | 564,534.00 | 940,890.00 |
| Bee County - 10.88 acres Cemetery | 157,306.00 | | | | 157,306.00 | 60% | 94,383.60 | 157,306.00 |
| 214 N Market, Goliad | | | | 343,510.00 | 343,510.00 | 70% | 240,457.00 | 343,510.00 |
| 1604 W Austin, Port Lavaka | | | | 561,345.00 | 561,345.00 | 70% | 392,941.50 | 561,345.00 |
| 2401 Houston Highway, Victoria | | | | 2,319,160.00 | 2,319,160.00 | 70% | 1,623,412.00 | 2,319,160.00 |
| Intangibles | 1,001.00 | 1,201.00 | 1.00 | | 2,203.00 | 10% | 220.30 | |
| **Total Assets** | 2,372,671.05 | 862,308.57 | 80,079.04 | 3,224,015.00 | 6,539,073.66 | | 4,193,750.10 | $ 5,232,646.00 |

Liquidation Expenses
Chapter 7 Trustee Fee — 5% — (209,687.50)

Funds available for creditors
Secured Creditors
Prosperity Bank — (384,655.65)
SL Funding 5 — (3,549,122.85)

Funds available for Priority Claims — 50,284.09

Priority Claims — (55,000.00)

Funds available for Unsecured — (4,715.91)

Unsecured Claims — 1,804,708.67

Unsecured Creditors recovery — 0%

**CLAIMS**

|  | Hauwin | Grace | Crossroads | GFH, LTD | Maximum Claims |
|---|---|---|---|---|---|
| **Schedule D - Secured Claims** | | | | | |
| Prosperity Bank | 384,655.65 | | | | 384,655.65 |
| SL Funding5 LLC | 2,255,441.62 | 3,549,122.85 | 126,078.80 | 1,294,761.01 | 3,549,122.85 |
| Property Taxes for 3 counties | | | | 83,969.38 (B) | 83,969.38 (B) |
| **Schedule E - Priority Claims** | | | | | |
| IRS - Payroll Taxes | | 55,000.00 | | | 55,000.00 |
| **Schedule F** | | | | | |
| Unsecured Claims - 10 creditors | 1,093,736.75 | | | | 1,093,736.75 |
| Unsecured Claims - 22 creditors | | 642,513.61 | | | 642,513.61 |
| Unsecured Claims - 3 creditors | | | 68,458.31 | | 68,458.31 |
| Total Unsecured Claims | | | | | 1,804,708.67 |
| **Total** | 3,733,834.02 | 4,246,636.46 | 194,537.11 | 1,378,730.39 | 5,877,456.55 |

Unsecured Claims - 10 creditors — 597,064.19 — Texas Service Life

NOTE
(A) GFH LTD OWNS REAL ESTATE IN GOLIAD, PORT LAVACA AND VICTORIA ESTIMATED TO BE WORTH $3,224,015.

**Grace, Hauwin, Crossroads & GFH, LTD**

CONSOLIDATIONG NET CASH FLOW SUMMARY

cash flow updated 9/20/24

| | | YEAR 1 | YEAR 2 | YEAR 3 | YEAR 4 | YEAR 5 |
|---|---|---|---|---|---|---|
| **Net Deposits less Expenses** | | | | | | |
| | Grace | 409,852 | 442,986 | 506,096 | 572,666 | 642,855 |
| | Hauwin | 112,584 | 129,670 | 147,543 | 166,231 | 185,765 |
| | Crossroads | (7,696) | (5,076) | 537 | 6,491 | 12,801 |
| | Total Annual Deposits less Expenses (EBITDA) | 514,740 | 567,580 | 654,176 | 745,388 | 841,421 |
| Less | Corporate Income Tax - 21% | (108,095) | (119,192) | (137,377) | (156,531) | (176,698) |
| | (consolidation and conversion to a C corp is assumed) | | | | | |
| | Net estimated cash | 406,645 | 448,388 | 516,799 | 588,857 | 664,723 |
| **CAPITAL EXPENDITURES AND GFH Ltd ad Valorum taxes** | | | | | | |
| | Grace CAPX | | 62,500 | | | |
| | Grace - GFH, Ltd ad valorum taxes | 45,000 | 46,000 | 47,000 | 48,000 | 49,000 |
| | Hauwin | | 77,000 | 77,000 | 77,000 | |
| | Total CAPX and GFH ad valorum taxes | 45,000 | 185,500 | 124,000 | 125,000 | 49,000 |
| | Net Free Cash Flow | 361,645 | 262,888 | 392,799 | 463,857 | 615,723 |

<span style="color:red">Exhibit C</span>
# Summary of General Unsecured Claims & Plan Proponent's Position on Allowance

| Creditor | Claim per Schedules Amount | Contingent | Unliquidated | Disputed | Proof of Claim* Amount | Date Filed | Objection | Plan Proponent's Position on Allowance |
|---|---|---|---|---|---|---|---|---|
| **GFH, Ltd.** | | | | | | | | |
| IRS[a] | $       - | | | | $   470.00 | 7/3/2024 | | $   470.00 |
| **Subtotal** | | | | | | | | **$   470.00** |
| **Grace Funeral Home** | | | | | | | | |
| Arctic Air | $   6,830.00 | | | | | | | 6,830.00 |
| Bizfund** | 113,000.00 | | | | 119,206.62 | 7/31/2024 | | - |
| Capital One Bank | 10,006.32 | | | | | | | 10,006.32 |
| Dell Financial Services | 3,660.24 | | | | 3,641.04 | 6/20/2024 | | 3,641.04 |
| Full Circle After Care | 3,042.00 | | | | 3,091.00 | 8/12/2024 | | 3,091.00 |
| Grace Speaks Ministries | 150.00 | C | | | | | | - |
| Great America Financial Services | 20,690.00 | | | | 54,205.80 | 7/25/2024 | Obj | 41,943.03 |
| Headway Capital | 56,200.00 | | | | 67,562.07 | 8/7/2024 | | 67,562.07 |
| IRS[a] | - | | | | 3,057.21 | 8/9/2024 | | 3,057.21 |
| Kellogg | 9,430.00 | | | | | | | 9,430.00 |
| Lamar Advertising | - | | | | 5,213.00 | 6/13/2024 | | 5,213.00 |
| Matthews International | 22,175.29 | | | | | | | 22,175.29 |
| McAdams | 1,374.29 | | | | | | | 1,374.29 |
| New First National Bank | 19,633.00 | | | | 13,482.69 | 7/23/2024 | | 13,482.69 |
| On Deck Capital | 194,000.00 | | | | 194,643.35 | 8/9/2024 | | - |
| Rauch-Milliken International | 12,713.00 | | | | | | | 12,713.00 |
| Rosnell Operations | 35,000.00 | | | | | | | 35,000.00 |
| Stericycle | 1,523.22 | | | | | | | 1,523.22 |
| Synergisdic | 36,935.00 | | | | | | | 36,935.00 |
| Tribute | - | | | | | | | |
| UNUM | 12,400.39 | | | | | | | 12,400.39 |
| Vera Lee - Woven | 5,315.88 | | | | | | | 5,315.88 |
| WEX | 8,974.95 | | | | | | | 8,974.95 |
| Wise Caskets | 69,459.31 | | | | | | | 69,459.31 |
| **Subtotal** | | | | | | | | **$   370,127.69** |
| **Hauwin Enterprises** | | | | | | | | |
| Independent BankersBank | $       - | | | | $   3,916.58 | 8/1/2024 | | $   3,916.58 |
| IRS[a] | - | | | | 689.31 | 7/3/2024 | | 689.31 |
| Martus Stone | - | | | | 70,367.00 | 7/25/2024 | | 70,367.00 |
| Texas Service Life Insurance Co.[†] | 597,064.19 | | | | 642,340.04 | 7/31/2024 | | 642,340.04 |
| Wilbert Vaults of Houston | 774.99 | | | | | | | 774.99 |
| Wise Products | 13,477.89 | | | | | | | 13,477.89 |

Exhibit C                    Page 1 of 2                    Summary of General Unsecured Claims

| Creditor | Claim per Schedules | | | | Proof of Claim* | | | Plan Proponent's Position on Allowance |
|---|---|---|---|---|---|---|---|---|
| | Amount | Contingent | Unliquidated | Disputed | Amount | Date Filed | Objection | |
| **Subtotal** | | | | | | | | $ 731,565.81 |
| **Crossroads Mortuary Services** | | | | | | | | |
| IRS[a] | $ - | | | | $ 470.00 | 7/3/2024 | | $ 470.00 |
| Monarch Resoures | 927.09 | | | | | | | 927.09 |
| Stericycle | 1,523.22 | | | | | | | 1,523.22 |
| U.S. Small Business Administration | 66,008.00 | | | D | | | | - |
| **Subtotal** | | | | | | | | $ 2,920.31 |
| **Charles & Heather Hauboldt** | | | | | | | | |
| American Express | $ - | | | | $ 4,259.49 | 7/15/2024 | | $ 4,259.49 |
| Capital One N.A. | - | | | | 5,327.07 | 7/3/2024 | | 5,327.07 |
| Citi Card | 4,500.00 | | | | | | | 4,500.00 |
| Credit One Bank | 1,327.98 | | | | | | | 1,327.98 |
| Huntington National Mgmt. (claim 14-1) | - | | | | 722.00 | 8/9/2024 | | 722.00 |
| Huntington National Mgmt. (claim 15-1) | - | | | | 1,658.75 | 8/9/2024 | | 1,658.75 |
| IRS | - | | | | 147,042.33 | 7/3/2024 | | 147,042.33 |
| Prosperity Bank‡ | 384,653.96 | | | | 372,385.32 | 8/9/2024 | | 372,385.32 |
| **Subtotal** | | | | | | | | $ 537,222.94 |

**Total Allowed General Unsecured Claims**  $ 1,642,306.75

**Notes**
* Reflects claims filed as of August 27, 2024. These amounts are subject to change as the Claims Bar Date was August 9, 2024, and the deadline for claims by governmental units is November 27, 2024. The claim of Full Circle Aftercare is timely mailed but received by the Clerk's office on August 12, 2024.
**General, unsecured portion of secured claim in Class 3.
†General, unsecured portion of secured claim in Class 5.
‡General, unsecured portion of secured claim in Class 2.
ªGeneral, unsecured portion of Priority Tax Claim in Section V(C)(4).

Exhibit C                    Page 2 of 2                    Summary of General Unsecured Claims

Summary of Payments under the Plan

Updated 10/22/24

| Period | Month | Class 1 SL Funding | Class 2 Prosperity | Class 3 Bizfund | Class 4 ODK Capital | Class 12 Employment FederalTax | Class 12 Ad Valorum Tax | Class 6&13 unsecured creditors | Total | | YEAR Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 10/01/24 | | | | | | | | | | |
| 1 | Nov-24 | 24,257 | 9,466 | | | | | | $ | 33,723 | |
| 2 | Dec-24 | 24,257 | 9,466 | | | | | | $ | 33,723 | |
| 3 | Jan-25 | 24,257 | 9,466 | | | | | | $ | 33,723 | |
| 4 | Feb-25 | 24,257 | 9,466 | | | 947 | | | $ | 34,670 | |
| 5 | Mar-25 | 24,257 | 9,466 | | | 947 | | | $ | 34,670 | |
| 6 | Apr-25 | 24,257 | 9,466 | | | 947 | | | $ | 34,670 | |
| 7 | May-25 | 40,000 | 9,466 | | | 947 | | | $ | 50,413 | |
| 8 | Jun-25 | 40,000 | 9,466 | | | 947 | | | $ | 50,413 | |
| 9 | Jul-25 | 40,000 | 9,466 | | | 947 | | | $ | 50,413 | |
| 10 | Aug-25 | 40,000 | 9,466 | | | 947 | | | $ | 50,413 | |
| 11 | Sep-25 | 40,000 | 9,466 | | | 947 | | | $ | 50,413 | |
| 12 | Oct-25 | 40,000 | 9,466 | | | 947 | 5,617 | 21,319 | $ | 77,348 | $ 534,592 |
| 13 | Nov-25 | 50,000 | 9,466 | | | 947 | 5,617 | | $ | 66,029 | |
| 14 | Dec-25 | 50,000 | 9,466 | 1,566 | 2,558 | 947 | 5,617 | | $ | 70,153 | |
| 15 | Jan-26 | 50,000 | 9,466 | | | 947 | 5,617 | 21,319 | $ | 87,348 | |
| 16 | Feb-26 | 50,000 | 9,466 | | | 947 | 5,617 | | $ | 66,029 | |
| 17 | Mar-26 | 50,000 | 9,466 | 1,566 | 2,558 | 947 | 5,617 | | $ | 70,153 | |
| 18 | Apr-26 | 3,683,707 | 546,993 | | | 947 | 5,617 | 21,319 | $ | 4,258,583 | |
| 19 | May-26 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 20 | Jun-26 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 21 | Jul-26 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 22 | Aug-26 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 23 | Sep-26 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 24 | Oct-26 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | $ 4,708,563 |
| 25 | Nov-26 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 26 | Dec-26 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 27 | Jan-27 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 28 | Feb-27 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 29 | Mar-27 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 30 | Apr-27 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 31 | May-27 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 32 | Jun-27 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 33 | Jul-27 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 34 | Aug-27 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 35 | Sep-27 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | $ 180,532 |
| 36 | Oct-27 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 37 | Nov-27 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 38 | Dec-27 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 39 | Jan-28 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 40 | Feb-28 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 41 | Mar-28 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 42 | Apr-28 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 43 | May-28 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 44 | Jun-28 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 45 | Jul-28 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 46 | Aug-28 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 47 | Sep-28 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | $ 180,532 |
| 48 | Oct-28 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 49 | Nov-28 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 50 | Dec-28 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 51 | Jan-29 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 52 | Feb-29 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 53 | Mar-29 | | | 1,566 | 2,558 | 947 | 5,617 | | $ | 10,687 | |
| 54 | Apr-29 | | | | | 947 | 5,617 | 21,319 | $ | 27,882 | |
| 55 | May-29 | | | | | 947 | 5,617 | | $ | 6,563 | |
| 56 | Jun-29 | | | 1,566 | 2,558 | 725 | 5,617 | | $ | 10,466 | |
| 57 | Jul-29 | | | | | 1,610 | 5,617 | 21,319 | $ | 28,546 | |
| 58 | Aug-29 | | | | | 2,218 | 5,617 | | $ | 7,835 | |
| 59 | Sep-29 | | | 126,871 | 207,160 | | 5,617 | 21,311 | $ | 360,959 | $ 532,517 |
| | Total | 4,319,251 | 707,915 | 150,366 | | 53,780 | 269,604 | 362,415 | | | 6,136,737 |

## AMORTIZATION SCHEDULES                    CLASS 1

### SL Funding 5

**Assumptions**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Annual Interest Rate | | 10.50% | | | | | |
| Payments made quarterly | | Monthly | | | | | |
| Beginning Balance | $ | 3,755,981 | | | | | |
| amortization period-in months | | irregular | | | | | |
| | | | Period | Payment | Interest | Principle | Balance |
| | | | 10/15/24 | | | | 3,755,981 |
| 1 | Interest only for 6 months | | 11/15/24 | 24,257 | 32,865 | (8,607) | 3,755,981 |
| 2 | | | 12/15/24 | 24,257 | 32,865 | (8,607) | 3,755,981 |
| 3 | $40,000 for the next 6 months | | 01/15/25 | 24,257 | 32,865 | (8,607) | 3,755,981 |
| 4 | | | Feb-25 | 24,257 | 32,865 | (8,607) | 3,764,588 |
| 5 | $50,000 for the next 6 months | | Mar-25 | 24,257 | 32,940 | (8,683) | 3,773,271 |
| 6 | | | Apr-25 | 24,257 | 33,016 | (8,759) | 3,782,029 |
| 7 | Balloon payment in 18 month | | May-25 | 40,000 | 33,093 | 6,907 | 3,775,122 |
| 8 | | | Jun-25 | 40,000 | 33,032 | 6,968 | 3,768,155 |
| 9 | Maturity Date 4/15/26 | | Jul-25 | 40,000 | 32,971 | 7,029 | 3,761,126 |
| 10 | | | Aug-25 | 40,000 | 32,910 | 7,090 | 3,754,036 |
| 11 | | | Sep-25 | 40,000 | 32,848 | 7,152 | 3,746,884 |
| 12 | | | Oct-25 | 40,000 | 32,785 | 7,215 | 3,739,669 |
| 13 | | | Nov-25 | 50,000 | 32,722 | 17,278 | 3,722,391 |
| 14 | | | Dec-25 | 50,000 | 32,571 | 17,429 | 3,704,962 |
| 15 | | | Jan-26 | 50,000 | 32,418 | 17,582 | 3,687,380 |
| 16 | | | Feb-26 | 50,000 | 32,265 | 17,735 | 3,669,645 |
| 17 | | | Mar-26 | 50,000 | 32,109 | 17,891 | 3,651,754 |
| 18 | | | Apr-26 | 3,683,707 | 31,953 | 3,651,754 | (0) |

## PROSPERITY BANK    CLASS 2

**Assumptions**

| | | | | | | |
|---|---|---|---|---|---|---|
| Annual Interest Rate | | 9.75% | | | | |
| Payments made quarterly | | Monthly | | | | |
| Beginning Balance | $ | 622,586 | | | | |
| amortization period-in months | | 48 | 4 years | | | |
| | | Period | Payment | Interest | Principle | Balance |
| | Effective Date | 10/15/24 | | | | 622,586 |
| 1 | | Nov-24 | 9,466 | 5,059 | 4,407 | 618,179 |
| 2 | $9,466 paid Monthly | Dec-24 | 9,466 | 5,023 | 4,443 | 613,735 |
| 3 | | Jan-25 | 9,466 | 4,987 | 4,479 | 609,256 |
| 4 | Balloon payment in 18th month | Feb-25 | 9,466 | 4,950 | 4,516 | 604,740 |
| 5 | | Mar-25 | 9,466 | 4,914 | 4,552 | 600,188 |
| 6 | Interest paid on the 15th | Apr-25 | 9,466 | 4,877 | 4,589 | 595,598 |
| 7 | | May-25 | 9,466 | 4,839 | 4,627 | 590,971 |
| 8 | | Jun-25 | 9,466 | 4,802 | 4,664 | 586,307 |
| 9 | | Jul-25 | 9,466 | 4,764 | 4,702 | 581,605 |
| 10 | | Aug-25 | 9,466 | 4,726 | 4,740 | 576,864 |
| 11 | | Sep-25 | 9,466 | 4,687 | 4,779 | 572,085 |
| 12 | | Oct-25 | 9,466 | 4,648 | 4,818 | 567,267 |
| 13 | | Nov-25 | 9,466 | 4,609 | 4,857 | 562,410 |
| 14 | | Dec-25 | 9,466 | 4,570 | 4,896 | 557,514 |
| 15 | | Jan-26 | 9,466 | 4,530 | 4,936 | 552,578 |
| 16 | | Feb-26 | 9,466 | 4,490 | 4,976 | 547,602 |
| 17 | | Mar-26 | 9,466 | 4,449 | 5,017 | 542,585 |
| 18 | | Apr-26 | 546,993 | 4,409 | 542,584 | 0 |

Calculation of Prosperity Claim after real estate sales and plus attorney fees

NOTE

| | | | |
|---|---|---|---|
| | Prosperity Bank Claim | $ | 848,586 |
| - | Erwin Property net sale proceed | $ | (126,000) |
| - | LS Saloon net sale proceeds | $ | (160,000) |
| + | Estimated attorney fees | $ | 60,000 |
| | Total | $ | 622,586 |

**AMORTIZATION SCHEDULES**     CLASS 3

### BIZFUND

**Assumptions**

| | |
|---|---|
| Annual Interest Rate | 5.00% |
| Payments made quarterly | Quarterly |
| Beginning Balance | $  119,206.62 |
| amortization period quarterly | |

| # | | Period | Payment | Interest | Interest accrual | Principle | Balance |
|---|---|---|---|---|---|---|---|
| | | 10/01/24 | | | | | 119,207 |
| 1 | Interest accrual for 12 months | Oct-24 | | | 497 | | 119,703 |
| 2 | | Nov-24 | | | 499 | | 120,202 |
| 3 | Payments made quarterly | Dec-24 | | | 501 | | 120,703 |
| 4 | on the 15th day | Jan-25 | | | 503 | | 121,206 |
| 5 | | Feb-25 | | | 505 | | 121,711 |
| 6 | Balloon payment in 60th month | Mar-25 | | | 507 | | 122,218 |
| 7 | | Apr-25 | | | 509 | | 122,727 |
| 8 | | May-25 | | | 511 | | 123,239 |
| 9 | | Jun-25 | | | 513 | | 123,752 |
| 10 | | Jul-25 | | | 516 | | 124,268 |
| 11 | | Aug-25 | | | 518 | | 124,786 |
| 12 | | Sep-25 | | | 520 | | 125,305 |
| 13 | | Oct-25 | | | | - | 125,305 |
| 14 | | Nov-25 | | | | - | 125,305 |
| 15 | | Dec-25 | 1,566 | 1,566 | | - | 125,305 |
| 16 | | Jan-26 | | | | - | 125,305 |
| 17 | | Feb-26 | | | | - | 125,305 |
| 18 | | Mar-26 | 1,566 | 1,566 | | - | 125,305 |
| 19 | | Apr-26 | | | | - | 125,305 |
| 20 | | May-26 | | | | - | 125,305 |
| 21 | | Jun-26 | 1,566 | 1,566 | | - | 125,305 |
| 22 | | Jul-26 | | | | - | 125,305 |
| 23 | | Aug-26 | | | | - | 125,305 |
| 24 | | Sep-26 | 1,566 | 1,566 | | - | 125,305 |
| 25 | | Oct-26 | | | | - | 125,305 |
| 26 | | Nov-26 | | | | - | 125,305 |
| 27 | | Dec-26 | 1,566 | 1,566 | | - | 125,305 |
| 28 | | Jan-27 | | | | - | 125,305 |
| 29 | | Feb-27 | | | | - | 125,305 |
| 30 | | Mar-27 | 1,566 | 1,566 | | - | 125,305 |
| 31 | | Apr-27 | | | | - | 125,305 |
| 32 | | May-27 | | | | - | 125,305 |
| 33 | | Jun-27 | 1,566 | 1,566 | | - | 125,305 |
| 34 | | Jul-27 | | | | - | 125,305 |
| 35 | | Aug-27 | | | | - | 125,305 |
| 36 | | Sep-27 | 1,566 | 1,566 | | - | 125,305 |
| 37 | | Oct-27 | | | | - | 125,305 |
| 38 | | Nov-27 | | | | - | 125,305 |
| 39 | | Dec-27 | 1,566 | 1,566 | | - | 125,305 |
| 40 | | Jan-28 | | | | - | 125,305 |
| 41 | | Feb-28 | | | | - | 125,305 |
| 42 | | Mar-28 | 1,566 | 1,566 | | - | 125,305 |
| 43 | | Apr-28 | | | | - | 125,305 |
| 44 | | May-28 | | | | - | 125,305 |
| 45 | | Jun-28 | 1,566 | 1,566 | | - | 125,305 |
| 46 | | Jul-28 | | | | - | 125,305 |
| 47 | | Aug-28 | | | | - | 125,305 |
| 48 | | Sep-28 | 1,566 | 1,566 | | - | 125,305 |
| 49 | | Oct-28 | | | | - | 125,305 |
| 50 | | Nov-28 | | | | - | 125,305 |
| 51 | | Dec-28 | 1,566 | 1,566 | | - | 125,305 |
| 52 | | Jan-29 | | | | - | 125,305 |
| 53 | | Feb-29 | | | | - | 125,305 |
| 54 | | Mar-29 | 1,566 | 1,566 | | - | 125,305 |
| 55 | | Apr-29 | | | | - | 125,305 |
| 56 | | May-29 | | | | - | 125,305 |
| 57 | | Jun-29 | 1,566 | 1,566 | | - | 125,305 |
| 58 | | Jul-29 | | | | - | 125,305 |
| 59 | | Aug-29 | | | | - | 125,305 |
| 60 | | Sep-29 | 126,871 | 1,566 | | 125,305 | 0 |

**AMORTIZATION SCHEDULES**         CLASS 4

### ODK Capital

Assumptions

| | | | | | | |
|---|---|---|---|---|---|---|
| Annual Interest Rate | | 5.00% | | | | |
| Payments made quarterly | | Quarterly | | | | |
| Beginning Balance | $ | 194,643.35 | | | | |
| amortization period-quaterlhy | | | | Interest | | |
| | Period | Payment | Interest | accrual | Principle | Balance |
| | 10/01/24 | | | | | 194,643 |
| 1 Interest accrual for 12 months | Oct-24 | | | 811 | | 195,454 |
| 2 | Nov-24 | | | 814 | | 196,269 |
| 3 Payments made quarterly | Dec-24 | | | 818 | | 197,087 |
| 4 on the 15th day | Jan-25 | | | 821 | | 197,908 |
| 5 | Feb-25 | | | 825 | | 198,732 |
| 6 Balloon payment in 60th month | Mar-25 | | | 828 | | 199,560 |
| 7 | Apr-25 | | | 832 | | 200,392 |
| 8 | May-25 | | | 835 | | 201,227 |
| 9 | Jun-25 | | | 838 | | 202,065 |
| 10 | Jul-25 | | | 842 | | 202,907 |
| 11 | Aug-25 | | | 845 | | 203,753 |
| 12 | Sep-25 | | | 849 | | 204,602 |
| 13 | Oct-25 | | | | - | 204,602 |
| 14 | Nov-25 | | | | - | 204,602 |
| 15 | Dec-25 | 2,558 | 2,558 | | - | 204,602 |
| 16 | Jan-26 | | | | - | 204,602 |
| 17 | Feb-26 | | | | - | 204,602 |
| 18 | Mar-26 | 2,558 | 2,558 | | - | 204,602 |
| 19 | Apr-26 | | | | - | 204,602 |
| 20 | May-26 | | | | - | 204,602 |
| 21 | Jun-26 | 2,558 | 2,558 | | - | 204,602 |
| 22 | Jul-26 | | | | - | 204,602 |
| 23 | Aug-26 | | | | - | 204,602 |
| 24 | Sep-26 | 2,558 | 2,558 | | - | 204,602 |
| 25 | Oct-26 | | | | - | 204,602 |
| 26 | Nov-26 | | | | - | 204,602 |
| 27 | Dec-26 | 2,558 | 2,558 | | - | 204,602 |
| 28 | Jan-27 | | | | - | 204,602 |
| 29 | Feb-27 | | | | - | 204,602 |
| 30 | Mar-27 | 2,558 | 2,558 | | - | 204,602 |
| 31 | Apr-27 | | | | - | 204,602 |
| 32 | May-27 | | | | - | 204,602 |
| 33 | Jun-27 | 2,558 | 2,558 | | - | 204,602 |
| 34 | Jul-27 | | | | - | 204,602 |
| 35 | Aug-27 | | | | - | 204,602 |
| 36 | Sep-27 | 2,558 | 2,558 | | - | 204,602 |
| 37 | Oct-27 | | | | - | 204,602 |
| 38 | Nov-27 | | | | - | 204,602 |
| 39 | Dec-27 | 2,558 | 2,558 | | - | 204,602 |
| 40 | Jan-28 | | | | - | 204,602 |
| 41 | Feb-28 | | | | - | 204,602 |
| 42 | Mar-28 | 2,558 | 2,558 | | - | 204,602 |
| 43 | Apr-28 | | | | - | 204,602 |
| 44 | May-28 | | | | - | 204,602 |
| 45 | Jun-28 | 2,558 | 2,558 | | - | 204,602 |
| 46 | Jul-28 | | | | - | 204,602 |
| 47 | Aug-28 | | | | - | 204,602 |
| 48 | Sep-28 | 2,558 | 2,558 | | - | 204,602 |
| 49 | Oct-28 | | | | - | 204,602 |
| 50 | Nov-28 | | | | - | 204,602 |
| 51 | Dec-28 | 2,558 | 2,558 | | - | 204,602 |
| 52 | Jan-29 | | | | - | 204,602 |
| 53 | Feb-29 | | | | - | 204,602 |
| 54 | Mar-29 | 2,558 | 2,558 | | - | 204,602 |
| 55 | Apr-29 | | | | - | 204,602 |
| 56 | May-29 | | | | - | 204,602 |
| 57 | Jun-29 | 2,558 | 2,558 | | - | 204,602 |
| 58 | Jul-29 | | | | - | 204,602 |
| 59 | Aug-29 | | | | - | 204,602 |
| 60 | Sep-29 | 207,160 | 2,558 | | 204,602 | (0) |

**AMORTIZATION SCHEDULES**          CLASS 12

### Federal Employment Taxes

**Assumtpions**

| | | | | |
|---|---|---|---|---|
| Annual Interest Rate | 8.00% | | | |
| Payments made quarterly | Monthly | | | |
| Begiining Balance | $ | 39,003 | 39,783 | |
| amortization period-in months | 60 | | | Interest |

| Period | Payment | Interest | accrual | Principle | Balance |
|---|---|---|---|---|---|
| | | | | | |

| # | | Period | Payment | Interest | accrual | Principle | Balance |
|---|---|---|---|---|---|---|---|
| | | 10/01/24 | | | | | 39,003 |
| 1 | Payments will be made on | Oct-24 | | | 260 | | 39,263 |
| 2 | the 15th | Nov-24 | | | 260 | | 39,523 |
| 3 | | Dec-24 | | | 260 | | 39,783 |
| 4 | Interest accual for 3 months | Jan-25 | | 265 | | (265) | 40,314 |
| 5 | | Feb-25 | 947 | 269 | | 678 | 39,905 |
| 6 | | Mar-25 | 947 | 266 | | 681 | 39,490 |
| 7 | | Apr-25 | 947 | 263 | | 683 | 39,070 |
| 8 | | May-25 | 947 | 260 | | 686 | 38,644 |
| 9 | | Jun-25 | 947 | 258 | | 689 | 38,213 |
| 10 | | Jul-25 | 947 | 255 | | 692 | 37,776 |
| 11 | | Aug-25 | 947 | 252 | | 695 | 37,333 |
| 12 | | Sep-25 | 947 | 249 | | 698 | 36,884 |
| 13 | | Oct-25 | 947 | 246 | | (246) | 37,130 |
| 14 | | Nov-25 | 947 | 248 | | 699 | 36,431 |
| 15 | | Dec-25 | 947 | 243 | | 704 | 35,727 |
| 16 | | Jan-26 | 947 | 238 | | 708 | 35,018 |
| 17 | | Feb-26 | 947 | 233 | | 713 | 34,305 |
| 18 | | Mar-26 | 947 | 229 | | 718 | 33,587 |
| 19 | | Apr-26 | 947 | 224 | | 723 | 32,864 |
| 20 | | May-26 | 947 | 219 | | 728 | 32,137 |
| 21 | | Jun-26 | 947 | 214 | | 732 | 31,404 |
| 22 | | Jul-26 | 947 | 209 | | 737 | 30,667 |
| 23 | | Aug-26 | 947 | 204 | | 742 | 29,925 |
| 24 | | Sep-26 | 947 | 199 | | 747 | 29,178 |
| 25 | | Oct-26 | 947 | 195 | | 752 | 28,426 |
| 26 | | Nov-26 | 947 | 190 | | 757 | 27,668 |
| 27 | | Dec-26 | 947 | 184 | | 762 | 26,906 |
| 28 | | Jan-27 | 947 | 179 | | 767 | 26,139 |
| 29 | | Feb-27 | 947 | 174 | | 772 | 25,367 |
| 30 | | Mar-27 | 947 | 169 | | 778 | 24,589 |
| 31 | | Apr-27 | 947 | 164 | | 783 | 23,806 |
| 32 | | May-27 | 947 | 159 | | 788 | 23,018 |
| 33 | | Jun-27 | 947 | 153 | | 793 | 22,225 |
| 34 | | Jul-27 | 947 | 148 | | 798 | 21,427 |
| 35 | | Aug-27 | 947 | 143 | | 804 | 20,623 |
| 36 | | Sep-27 | 947 | 137 | | 809 | 19,814 |
| 37 | | Oct-27 | 947 | 132 | | 815 | 18,999 |
| 38 | | Nov-27 | 947 | 127 | | 820 | 18,179 |
| 39 | | Dec-27 | 947 | 121 | | 825 | 17,353 |
| 40 | | Jan-28 | 947 | 116 | | 831 | 16,523 |
| 41 | | Feb-28 | 947 | 110 | | 837 | 15,686 |
| 42 | | Mar-28 | 947 | 105 | | 842 | 14,844 |
| 43 | | Apr-28 | 947 | 99 | | 848 | 13,996 |
| 44 | | May-28 | 947 | 93 | | 853 | 13,143 |
| 45 | | Jun-28 | 947 | 88 | | 859 | 12,284 |
| 46 | | Jul-28 | 947 | 82 | | 865 | 11,419 |
| 47 | | Aug-28 | 947 | 76 | | 871 | 10,548 |
| 48 | | Sep-28 | 947 | 70 | | 876 | 9,672 |
| 49 | | Oct-28 | 947 | 64 | | 882 | 8,790 |
| 50 | | Nov-28 | 947 | 59 | | 888 | 7,902 |
| 51 | | Dec-28 | 947 | 53 | | 894 | 7,008 |
| 52 | | Jan-29 | 947 | 47 | | 900 | 6,108 |
| 53 | | Feb-29 | 947 | 41 | | 906 | 5,202 |
| 54 | | Mar-29 | 947 | 35 | | 912 | 4,290 |
| 55 | | Apr-29 | 947 | 29 | | 918 | 3,372 |
| 56 | | May-29 | 3,377 | 22 | | 3,354 | 17 |

**AMORTIZATION SCHEDULES**          CLASS 12

### Ad Valorum Property Taxes

**Assumptions**

| | | | | | | |
|---|---|---|---|---|---|---|
| Annual Interest Rate | 12.00% | | | | | |
| Payments made quarterly | Monthly | | | | | |
| Begining Balance | $  191,177 | 213,290 | | | | |
| amortization period-in months | 48 | | | Interest | | |

| | | Period | Payment | Interest | accrual | Principle | Balance |
|---|---|---|---|---|---|---|---|
| | | 10/01/24 | | | | | 191,177 |
| | | | | | | | 191,177 |
| 1 | the 15th | Nov-24 | | | 1,912 | | 193,089 |
| 2 | | Dec-24 | | | 1,931 | | 195,020 |
| 3 | Interest accrual for 12 months | Jan-25 | | | 1,950 | | 196,970 |
| 4 | | Feb-25 | | | 1,970 | | 198,940 |
| 5 | Payments start in the 13th | Mar-25 | | | 1,989 | | 200,929 |
| 6 | month and finish on the | Apr-25 | | | 2,009 | | 202,938 |
| 7 | 60th month | May-25 | | | 2,029 | | 204,968 |
| 8 | | Jun-25 | | | 2,050 | | 207,017 |
| 9 | | Jul-25 | | | 2,070 | | 209,088 |
| 10 | | Aug-25 | | | 2,091 | | 211,179 |
| 11 | | Sep-25 | | | 2,112 | | 213,290 |
| 12 | | Oct-25 | 5,617 | 2,133 | | 3,484 | 209,806 |
| 13 | | Nov-25 | 5,617 | 2,098 | | 3,519 | 206,288 |
| 14 | | Dec-25 | 5,617 | 2,063 | | 3,554 | 202,734 |
| 15 | | Jan-26 | 5,617 | 2,027 | | 3,589 | 199,144 |
| 16 | | Feb-26 | 5,617 | 1,991 | | 3,625 | 195,519 |
| 17 | | Mar-26 | 5,617 | 1,955 | | 3,662 | 191,858 |
| 18 | | Apr-26 | 5,617 | 1,919 | | 3,698 | 188,159 |
| 19 | | May-26 | 5,617 | 1,882 | | 3,735 | 184,424 |
| 20 | | Jun-26 | 5,617 | 1,844 | | 3,773 | 180,652 |
| 21 | | Jul-26 | 5,617 | 1,807 | | 3,810 | 176,842 |
| 22 | | Aug-26 | 5,617 | 1,768 | | 3,848 | 172,993 |
| 23 | | Sep-26 | 5,617 | 1,730 | | 3,887 | 169,106 |
| 24 | | Oct-26 | 5,617 | 1,691 | | 3,926 | 165,181 |
| 25 | | Nov-26 | 5,617 | 1,652 | | 3,965 | 161,216 |
| 26 | | Dec-26 | 5,617 | 1,612 | | 4,005 | 157,211 |
| 27 | | Jan-27 | 5,617 | 1,572 | | 4,045 | 153,167 |
| 28 | | Feb-27 | 5,617 | 1,532 | | 4,085 | 149,081 |
| 29 | | Mar-27 | 5,617 | 1,491 | | 4,126 | 144,955 |
| 30 | | Apr-27 | 5,617 | 1,450 | | 4,167 | 140,788 |
| 31 | | May-27 | 5,617 | 1,408 | | 4,209 | 136,579 |
| 32 | | Jun-27 | 5,617 | 1,366 | | 4,251 | 132,328 |
| 33 | | Jul-27 | 5,617 | 1,323 | | 4,293 | 128,035 |
| 34 | | Aug-27 | 5,617 | 1,280 | | 4,336 | 123,699 |
| 35 | | Sep-27 | 5,617 | 1,237 | | 4,380 | 119,319 |
| 36 | | Oct-27 | 5,617 | 1,193 | | 4,424 | 114,895 |
| 37 | | Nov-27 | 5,617 | 1,149 | | 4,468 | 110,427 |
| 38 | | Dec-27 | 5,617 | 1,104 | | 4,512 | 105,915 |
| 39 | | Jan-28 | 5,617 | 1,059 | | 4,558 | 101,357 |
| 40 | | Feb-28 | 5,617 | 1,014 | | 4,603 | 96,754 |
| 41 | | Mar-28 | 5,617 | 968 | | 4,649 | 92,105 |
| 42 | | Apr-28 | 5,617 | 921 | | 4,696 | 87,409 |
| 43 | | May-28 | 5,617 | 874 | | 4,743 | 82,667 |
| 44 | | Jun-28 | 5,617 | 827 | | 4,790 | 77,877 |
| 45 | | Jul-28 | 5,617 | 779 | | 4,838 | 73,039 |
| 46 | | Aug-28 | 5,617 | 730 | | 4,886 | 68,152 |
| 47 | | Sep-28 | 5,617 | 682 | | 4,935 | 63,217 |
| 48 | | Oct-28 | 5,617 | 632 | | 4,985 | 58,232 |
| 49 | | Nov-28 | 5,617 | 582 | | 5,034 | 53,198 |
| 50 | | Dec-28 | 5,617 | 532 | | 5,085 | 48,113 |
| 51 | | Jan-29 | 5,617 | 481 | | 5,136 | 42,978 |
| 52 | | Feb-29 | 5,617 | 430 | | 5,187 | 37,791 |
| 53 | | Mar-29 | 5,617 | 378 | | 5,239 | 32,552 |
| 54 | | Apr-29 | 5,617 | 326 | | 5,291 | 27,261 |
| 55 | | May-29 | 5,617 | 273 | | 5,344 | 21,916 |
| 56 | | Jun-29 | 5,617 | 219 | | 5,398 | 16,519 |
| 57 | | Jul-29 | 5,617 | 165 | | 5,452 | 11,067 |
| 58 | | Aug-29 | 5,617 | 111 | | 5,506 | 5,561 |
| 59 | | Sep-29 | 5,617 | 56 | | 5,561 | 0 |

**AMORTIZATION SCHEDULES**

### Charles & Heather Income Tax

**Assumtpions**

| | | |
|---|---|---|
| Annual Interest Rate | 8.00% | |
| Payments made quarterly | Monthly | |
| Begiining Balance | $ 274,808 | (allowed claim of $421,849.91) |
| amortization period-in months | 51 | |

| | | Period | Payment | Interest | Principle | Balance |
|---|---|---|---|---|---|---|
| | | 10/01/24 | | | | 274,808 |
| 1 | Payments will be made on | Oct-24 | 1,832 | 1,832 | | 274,808 |
| 2 | the 15th | Nov-24 | 1,832 | 1,832 | | 274,808 |
| 3 | | Dec-24 | 1,832 | 1,832 | | 274,808 |
| 4 | Interst only for 3 months | Jan-25 | 6,374 | 1,832 | 4,542 | 272,098 |
| 5 | | Feb-25 | 6,374 | 1,832 | 4,542 | 269,388 |
| 6 | | Mar-25 | 6,374 | 1,832 | 4,542 | 266,678 |
| 7 | | Apr-25 | 6,374 | 1,832 | 4,542 | 263,968 |
| 8 | | May-25 | 6,374 | 1,832 | 4,542 | 261,259 |
| 9 | | Jun-25 | 6,374 | 1,832 | 4,542 | 258,549 |
| 10 | | Jul-25 | 6,374 | 1,832 | 4,542 | 255,839 |
| 11 | | Aug-25 | 6,374 | 1,832 | 4,542 | 253,129 |
| 12 | | Sep-25 | 6,374 | 1,832 | 4,542 | 250,419 |
| 13 | | Oct-25 | 6,374 | 1,669 | 4,705 | 245,714 |
| 14 | | Nov-25 | 6,374 | 1,638 | 4,736 | 240,979 |
| 15 | | Dec-25 | 6,374 | 1,607 | 4,767 | 236,211 |
| 16 | | Jan-26 | 6,374 | 1,575 | 4,799 | 231,412 |
| 17 | | Feb-26 | 6,374 | 1,543 | 4,831 | 226,581 |
| 18 | | Mar-26 | 6,374 | 1,511 | 4,863 | 221,717 |
| 19 | | Apr-26 | 6,374 | 1,478 | 4,896 | 216,821 |
| 20 | | May-26 | 6,374 | 1,445 | 4,929 | 211,893 |
| 21 | | Jun-26 | 6,374 | 1,413 | 4,961 | 206,931 |
| 22 | | Jul-26 | 6,374 | 1,380 | 4,994 | 201,937 |
| 23 | | Aug-26 | 6,374 | 1,346 | 5,028 | 196,909 |
| 24 | | Sep-26 | 6,374 | 1,313 | 5,061 | 191,848 |
| 25 | | Oct-26 | 6,374 | 1,279 | 5,095 | 186,753 |
| 26 | | Nov-26 | 6,374 | 1,245 | 5,129 | 181,624 |
| 27 | | Dec-26 | 6,374 | 1,211 | 5,163 | 176,461 |
| 28 | | Jan-27 | 6,374 | 1,176 | 5,198 | 171,263 |
| 29 | | Feb-27 | 6,374 | 1,142 | 5,232 | 166,031 |
| 30 | | Mar-27 | 6,374 | 1,107 | 5,267 | 160,764 |
| 31 | | Apr-27 | 6,374 | 1,072 | 5,302 | 155,461 |
| 32 | | May-27 | 6,374 | 1,036 | 5,338 | 150,124 |
| 33 | | Jun-27 | 6,374 | 1,001 | 5,373 | 144,751 |
| 34 | | Jul-27 | 6,374 | 965 | 5,409 | 139,342 |
| 35 | | Aug-27 | 6,374 | 929 | 5,445 | 133,897 |
| 36 | | Sep-27 | 6,374 | 893 | 5,481 | 128,415 |
| 37 | | Oct-27 | 6,374 | 856 | 5,518 | 122,897 |
| 38 | | Nov-27 | 6,374 | 819 | 5,555 | 117,343 |
| 39 | | Dec-27 | 6,374 | 782 | 5,592 | 111,751 |
| 40 | | Jan-28 | 6,374 | 745 | 5,629 | 106,122 |
| 41 | | Feb-28 | 6,374 | 707 | 5,667 | 100,456 |
| 42 | | Mar-28 | 6,374 | 670 | 5,704 | 94,751 |
| 43 | | Apr-28 | 6,374 | 632 | 5,742 | 89,009 |
| 44 | | May-28 | 6,374 | 593 | 5,781 | 83,228 |
| 45 | | Jun-28 | 6,374 | 555 | 5,819 | 77,409 |
| 46 | | Jul-28 | 6,374 | 516 | 5,858 | 71,551 |
| 47 | | Aug-28 | 6,374 | 477 | 5,897 | 65,654 |
| 48 | | Sep-28 | 6,374 | 438 | 5,936 | 59,718 |
| 49 | | Oct-28 | 6,374 | 398 | 5,976 | 53,742 |
| 50 | | Nov-28 | 6,374 | 358 | 6,016 | 47,726 |
| 51 | | Dec-28 | 6,374 | 318 | 6,056 | 41,671 |
| 52 | | Jan-29 | 6,374 | 278 | 6,096 | 35,574 |
| 53 | | Feb-29 | 6,374 | 237 | 6,137 | 29,437 |
| 54 | | Mar-29 | 6,374 | 196 | 6,178 | 23,260 |
| 55 | | Apr-29 | 6,374 | 155 | 6,219 | 17,041 |
| 56 | | May-29 | 17,154 | 114 | 17,040 | 0 |

**AMORTIZATION SCHEDULES**  CLASS 6  and
Class 13

### Class 6/13:  General Unsecured Creditors

**Assumtions**

| | | | | |
|---|---|---|---|---|
| Assumed Allowed Unsecured Claims | $ | 1,449,660 | | |
| Plan distribution Dividend | | 25% | | |
| Allowed Unsecured Creditors plan | $ | 362,415 | | |
| Quarterly Payments | $ | 21,319 | | Accum. |
| | | Period | Payment | Total |
| | | 10/01/24 | | |

| | | Period | Payment | Total |
|---|---|---|---|---|
| 1 | Payments will be made on the 15th | Nov-24 | | |
| 2 | | Dec-24 | | |
| 3 | Balloon payment on 60th month | Jan-25 | | |
| 4 | | Feb-25 | | |
| 5 | | Mar-25 | | |
| 6 | | Apr-25 | | |
| 7 | | May-25 | | |
| 8 | | Jun-25 | | |
| 9 | | Jul-25 | | |
| 10 | | Aug-25 | | |
| 11 | | Sep-25 | | |
| 12 | | Oct-25 | 21,319 | |
| 13 | | Nov-25 | | |
| 14 | | Dec-25 | | |
| 15 | | Jan-26 | 21,319 | 42,638 |
| 16 | | Feb-26 | | |
| 17 | | Mar-26 | | |
| 18 | | Apr-26 | 21,319 | 63,957 |
| 19 | | May-26 | | |
| 20 | | Jun-26 | | |
| 21 | | Jul-26 | 21,319 | 85,276 |
| 22 | | Aug-26 | | |
| 23 | | Sep-26 | | |
| 24 | | Oct-26 | 21,319 | 106,595 |
| 25 | | Nov-26 | | |
| 26 | | Dec-26 | | |
| 27 | | Jan-27 | 21,319 | 127,914 |
| 28 | | Feb-27 | | |
| 29 | | Mar-27 | | |
| 30 | | Apr-27 | 21,319 | 149,233 |
| 31 | | May-27 | | |
| 32 | | Jun-27 | | |
| 33 | | Jul-27 | 21,319 | 170,552 |
| 34 | | Aug-27 | | |
| 35 | | Sep-27 | | |
| 36 | | Oct-27 | 21,319 | 191,871 |
| 37 | | Nov-27 | | |
| 38 | | Dec-27 | | |
| 39 | | Jan-28 | 21,319 | 213,190 |
| 40 | | Feb-28 | | |
| 41 | | Mar-28 | | |
| 42 | | Apr-28 | 21,319 | 234,509 |
| 43 | | May-28 | | |
| 44 | | Jun-28 | | |
| 45 | | Jul-28 | 21,319 | 255,828 |
| 46 | | Aug-28 | | |
| 47 | | Sep-28 | | |
| 48 | | Oct-28 | 21,319 | 277,147 |
| 49 | | Nov-28 | | |
| 50 | | Dec-28 | | |
| 51 | | Jan-29 | 21,319 | 298,466 |
| 52 | | Feb-29 | | |
| 53 | | Mar-29 | | |
| 54 | | Apr-29 | 21,319 | 319,785 |
| 55 | | May-29 | | |
| 56 | | Jun-29 | | |
| 57 | | Jul-29 | 21,319 | 341,104 |
| 58 | | Aug-29 | | |
| 59 | | Sep-29 | 21,311 | 362,415 |
| | Total | | 362,415 | |

**AMORTIZATION SCHEDULES**

### Class 5:  Texas Service Life

**Assumtions**

| | | | | |
|---|---|---|---|---|
| Assumed Allowed Unsecured Claims | $ | 645,340 | | |
| Plan distribution Dividend | | 25% | | |
| Allowed Unsecured Creditors plan | $ | 161,335 | | |
| Quarterly Payments | $ | 9,490 | | Accum. |

| | | Period | Payment | Total |
|---|---|---|---|---|
| | | 10/01/24 | | |
| 1 | Payments will be made on | Oct-24 | | |
| 2 | the 15th | Nov-24 | | |
| 3 | | Dec-24 | | |
| 4 | Balloon payment on 60th month | Jan-25 | | |
| 5 | | Feb-25 | | |
| 6 | | Mar-25 | | |
| 7 | | Apr-25 | | |
| 8 | | May-25 | | |
| 9 | | Jun-25 | | |
| 10 | | Jul-25 | | |
| 11 | | Aug-25 | | |
| 12 | | Sep-25 | | |
| 13 | | Oct-25 | 9,490 | |
| 14 | | Nov-25 | | |
| 15 | | Dec-25 | | |
| 16 | | Jan-26 | 9,490 | 18,981 |
| 17 | | Feb-26 | | |
| 18 | | Mar-26 | | |
| 19 | | Apr-26 | 9,490 | 28,471 |
| 20 | | May-26 | | |
| 21 | | Jun-26 | | |
| 22 | | Jul-26 | 9,490 | 37,961 |
| 23 | | Aug-26 | | |
| 24 | | Sep-26 | | |
| 25 | | Oct-26 | 9,490 | 47,451 |
| 26 | | Nov-26 | | |
| 27 | | Dec-26 | | |
| 28 | | Jan-27 | 9,490 | 56,942 |
| 29 | | Feb-27 | | |
| 30 | | Mar-27 | | |
| 31 | | Apr-27 | 9,490 | 66,432 |
| 32 | | May-27 | | |
| 33 | | Jun-27 | | |
| 34 | | Jul-27 | 9,490 | 75,922 |
| 35 | | Aug-27 | | |
| 36 | | Sep-27 | | |
| 37 | | Oct-27 | 9,490 | 85,413 |
| 38 | | Nov-27 | | |
| 39 | | Dec-27 | | |
| 40 | | Jan-28 | 9,490 | 94,903 |
| 41 | | Feb-28 | | |
| 42 | | Mar-28 | | |
| 43 | | Apr-28 | 9,490 | 104,393 |
| 44 | | May-28 | | |
| 45 | | Jun-28 | | |
| 46 | | Jul-28 | 9,490 | 113,884 |
| 47 | | Aug-28 | | |
| 48 | | Sep-28 | | |
| 49 | | Oct-28 | 9,490 | 123,374 |
| 50 | | Nov-28 | | |
| 51 | | Dec-28 | | |
| 52 | | Jan-29 | 9,490 | 132,864 |
| 53 | | Feb-29 | | |
| 54 | | Mar-29 | | |
| 55 | | Apr-29 | 9,490 | 142,354 |
| 56 | | May-29 | | |
| 57 | | Jun-29 | | |
| 58 | | Jul-29 | 9,490 | 151,845 |
| 59 | | Aug-29 | | |
| 60 | | Sep-29 | 9,490 | 161,335 |
| | Total | | 161,335 | |